CHRISTINA STEWART *v.* BUDGET RENT-A-CAR CORPORATION, BUDGET RENT-A-CAR OF HAWAII, ROYAL HAWAIIAN TRADING CO., INC., AND ISUZU MOTORS, LTD.

No. 4858.

MAY 26, 1970.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ., AND CIRCUIT JUDGE LAURETA IN PLACE OF MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

The plaintiff was injured when her rented car went off the side of the road on the island of Hawaii. She brought suit against the rental agency, the distributor and the manufacturer of the car alleging breach of an implied warranty of fitness for the use intended. The rental agency cross-complained against the distributor and the manufacturer. The distributor in turn cross-complained against the manufacturer. After the court granted a directed verdict on behalf of the distributor and the manufacturer against the plaintiff's claim and the rental agency's cross-claim, the jury returned a verdict for the plaintiff against the rental agency in the sum of $90,500.00 and judgment was entered for that amount and costs.

The defendant rental agency appeals on the ground that not enough evidence was adduced by the plaintiff to prove that there was a defect in the automobile and that a defect was the cause of the accident. The rental agency further claims that the trial court improperly dismissed its cross-claim against the distributor and manufacturer of the allegedly defective car for want of proof of the defect when the car was in their control. We affirm the court's ruling that there was sufficient evidence of a defective automobile to go to the jury and reverse the court's ruling directing a verdict in favor of the manufacturer and distributor. All other specifications of error are dismissed as without merit.

During the course of the trial the plaintiff testified that on February 20, 1966 she was driving the defendant's rental car along a straight and level section of an asphalt, two lane road on a sunny day at 10:00 in the morning. She testified that the car began veering to the left and that she could not control this by using the steering wheel. Her immediate application of the brakes caused the car to "jump or jerk" further to the left. The car then plunged off an embankment and overturned. The plaintiff was seri-

ously injured. The relevant portion of her testimony is set out in the footnote below.[1]

The car, a 1966 Isuzu "Bellett" which had been driven only 2829 miles, was towed to the nearest town where it was stored. The defendant rental agency later had the car cut in half. The front half was shipped from Hilo to Honolulu. The plaintiff's expert inspected the front half in Honolulu and subsequently flew to the place where the rear half was stored on the island of Hawaii. By that time the rear half had been partially "cannibalized" as many parts, including a substantial portion of the rear brake assembly, had been removed and sold.

On the basis of his inspection the plaintiff's expert, a master mechanic, discovered that two parts of the steering mechanism, the upper control ball joint and the right tie rod ends were broken; yet he was unable to say that the accident was the result of a defect. The accident might well have caused the damage to the parts or, conversely, their failure might have caused the accident. Given those contradictory inferences, the expert could not give his honest opinion as to the existence of a mechanical defect in the car. He stated that a proper diagnosis could only be had if the car was in one piece or could be driven. In its present state no diagnosis was possible.

The rental agency introduced testimony that they had the car "thoroughly" inspected and serviced upon acquir-

---

[1] ". . . I noticed the car began going over to the left of the road. And when I started to pull it back, tried to pull it back, nothing happened: it just didn't work. And, ah, it just kept on going on over toward the left-hand side of the road. I slammed on my brake, which threw this front end of this car—I mean, it jumped or jerked toward the, further toward the left. . . .

. . . .

"It sort of jumped or jerked, the front end of it, to further to the left, so I took my foot off the brake, and the car just kept going. By this time I was terrified. And I looked down the road, I couldn't see anything coming, and, then, we were right on the shoulder, and I, I could see the front end of the car was right at the embankment. And that's all I remember—lost consciousness."

ing it. They further maintain that these "thorough" inspections were performed after each of the five rentals prior to the time the plaintiff rented the car. The inspections were admittedly limited to 15 to 20 minutes duration. The plaintiff contends, however, that no test or inspection on the steering mechanism or the brake assembly was performed by a qualified mechanic in spite of the general inspections.

## I. PROOF OF DEFECT.

The parties to this appeal have not seriously argued that strict liability in tort should not be the law of Hawaii where certain consumer products are involved. They focus more precisely on whether there has been an adequate showing of a defect in the present case. Before we reach that question, we must first settle the matter of the basis of liability.

Although this court has never had the occasion to rule on this matter,[2] it is the modern trend and the better reasoned view that strict liability in tort is a sound legal basis for recovery in products liability cases.[3] The leading arguments for the adoption of a rule of strict products liability have been that the public interest in human life and safety requires the maximum possible protection that the law can muster against dangerous defects in products; that by placing the goods on the market the maker and those in the chain of distribution represent to the public

---

[2] In Chapman v. Brown, 198 Fed. Supp. 78 (D. Hawaii, 1961) aff'd 304 F.2d 149 (9th cir. 1962), District Judge Tavares held that the implied warranty of fitness in products liability cases was the law of Hawaii even though the Hawaii Supreme Court had never ruled on the question. In that case the plaintiff recovered for injuries received when a hula skirt caught fire and burned her.

[3] Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962) ; 2 Frumer & Friedman, *Products Liability* § 16A at 3-173 (1968) ; Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791 (1966).

that the products are suitable and safe for use; and that the burden of accidental injuries caused by defective chattels should be placed upon those in the chain of distribution as a cost of doing business and as an incentive to guard against such defects.[4]

Therefore we adopt the rule that one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased. This is essentially the rule adopted in the *Second Restatement of Torts,* Section 402A. We agree with the New Jersey Supreme Court in *Cintrone* v. *Hertz Truck Leasing & Rental Service,* 45 N.J. 434, 446, 212 A.2d 769, 775 (1965) that there is no good reason for restricting the duty to sellers alone. A lessor, like the seller, is in a better position to know a defect and control it, as well as distribute any resulting losses.

While the basis for damages resulting from a defect in an automobile is that of strict liability in tort, this in no way dispenses with the requirements of proof that the product was in some way defective and that the damages were caused by the defect. This is the central issue in the present case. The plaintiff provided the only information that anything was wrong with the car. She claimed that it began going uncontrollably to the left of the road. Upon applying her brakes it jumped or jerked further to the left. In the absence of expert testimony on the exact cause of the accident or on the probabilities of a defect causing the accident, the issue squarely put is whether this testimony

---

[4] Prosser, *Torts* § 97 at 673 (3d ed. 1964) ; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960) ; Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942).

of the user and the fact of an accident of this character is enough to send the case to the jury.

The nature and qualtiy of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally varies. The most convincing evidence is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection. If an accident sufficiently destroys the product, or the crucial parts, then an expert's opinion on the probabilities that a defect caused the accident would be helpful. If no such opinion is possible, as in the present case, the user's testimony on what happened is another method of proving that the product was defective. If the user is unable to testify, as where the accident killed him or incapacitated him, no other witness was present at the time of the accident, and the product was destroyed, the fact of the accident and the probabilities are all that remain for the party seeking recovery. At this point the plaintiff can attempt to negate the user as the cause and further negate other causes not attributable to the defendant. These kinds of proof introduced alone or cumulatively are evidence which help establish the presence of a defect as the cause of the damage.[5]

Of course whether the proof is of the sufficient quantum to get past a motion for a directed verdict and to the jury will depend on each case. In most products liability cases the proof of a defect is usually shown by an expert witness or by the user's testimony as substantiated by an additional eye witness. Yet where there is no additional eye witness, as in the present case, and where the only

---

[5] See Keeton, *Manufacturer's Liability: The Meaning of "Defect" in the Manufacture and Design of Products*, 20 Syracuse L. Rev. 559, 564-65 (1969) for cases applying these examples of proof.

In the most extreme circumstances a court might hold that where no specific defect can be shown, recovery is to be allowed anyway as a carefully driven vehicle does not leave the road in the absence of a defect in the car. See Vanek v. Kirby, —— Ore. ——, 450 P.2d 778 (1969). See Note, *Proof of Defect in a Strict Products Liability Case*, 22 Me. L. Rev. 189 (1970).

expert was unable to form an opinion because of the damaged condition of the car and the subsequent changes in the car's condition, we nevertheless do not think that a directed verdict against the plaintiff is always justified as a matter of law.

A directed verdict may be granted only when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor. See *Young* v. *Price,* 48 Haw. 22, 395 P.2d 365 (1965); *Elmore* v. *American Motors Corp.,* 70 Cal. 2d 578, 75 Cal. Rptr. 652, 451 P.2d 84 (1969). Circumstantial evidence is certainly admissible to establish a defect and the fact that it caused the accident. *Vandermark* v. *Ford Motor Co.,* 61 Cal. 2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 (1964); *Elmore* v. *American Motors Corp., supra.* The question whether a directed verdict is proper turns on the court's judgment whether the inferences drawn from the circum-stantial evidence measure up to the standard for a directed verdict. We think the testimony of the plaintiff, Mrs. Stewart, concerning the events immediately preceding the accident was sufficient to yield an inference that there was a defective condition which caused the accident. *See Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960); *Cintrone* v. *Hertz Leasing & Rental Service,* 45 N.J. 434, 212 A.2d 769 (1965). Added to this was other testimony by Mrs. Stewart that tended to negate any causation not attributable to the rental agency, the distributor or the manufacturer.[6] The car had not been taken on bumpy roads after the plaintiff rented it. It was a clear day and she drove on a straight and level highway at the

---

[6] *Compare* Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969), *with* Jakubowski v. Minn. Mining & Mfg., 42 N.J. 177, 199 A.2d 826 (1964). See also the dissent by Weintraub, C.J., in Jakubowski, *supra.*

time of the accident. Furthermore, there was also testimony concerning the damage to the front end of the car although such damage may well have been caused by the accident rather than causing it. Taken as a whole we think the quantum of evidence in this case was sufficient to go to the jury, fully recognizing that except for the evidence concerning the broken parts it was circumstantial and offered by the user.

## II. THE DIRECTED VERDICT FOR THE MANUFACTURER AND THE DISTRIBUTOR OF THE VEHICLE.

The rental agency has also appealed from the trial court's granting of a directed verdict in favor of the manufacturer and distributor against the rental agency's cross-claim. The question raised here is whether enough evidence was introduced so that the jury could have found that a defect existed when the manufacturer and distributor sold the car in question.[7] The factual issue for the jury would be whether any defect in the car was the result of a defect in structure or design attributable to the manufacturer or distributor or, alternatively, was the result of a failure to maintain the car on the part of the rental agency thus exculpating the manufacturer and distributor.

If there was enough evidence from which a jury might infer that reasonable care was exercised by the rental agency in the maintenance of the car, then the jury could have found that a defect was present at the time the product left the hands of a manufacturer and the distributor. Whether or not this was the case would depend upon the jury's evaluation of the nature of the accident and the length of time the car had been in the rental agency's

---

[7] Under the doctrine of strict products liability no privity of contract is required to be shown. Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962).

possession; all of which influence the weight of the inference to be drawn, if any, that the defect which caused the accident existed when the car passed from the manufacturer to the distributor to the rental agency. In the present case there is no need to determine what length of time must pass after the final sale of the product or how many miles need be driven before it is no longer reasonable for a jury to hold the manufacturer or distributor liable for a defect. See *Dagley* v. *Armstrong Rubber Co.,* 344 F.2d 245 (7th cir. 1965); *Carney* v. *Sears Roebuck & Co.,* 309 F.2d 300 (4th cir. 1962). This car had been rented only five times and driven 2829 miles. Therefore, we hold that if there was sufficient evidence of a defect to go to the jury with respect to the rental agency, considering the nature of the accident and the testimony of the user, there was likewise sufficient evidence of a defect to go to the jury with respect to the manufacturer and the distributor. Accordingly, the case must be remanded for a new trial only on the question of the manufacturer's and distributor's liability under the cross-claim. The amount of the plaintiff's damages having been determined by the jury to be $90,500.00, and there being no error with respect thereto, the plaintiff's judgment against the defendant rental agency is affirmed.

It is so ordered.

*Thomas M. Waddoups* (*Anthony & Waddoups* of counsel) for Budget Rent-A-Car of Hawaii, defendant-appellant.

*Ronald D. Libkuman* (*Libkuman, Shimabukuro & Ventura* of counsel) for Royal Hawaiian Trading Co., Inc., defendant-appellee.

*Asa M. Akinaka* (*Padgett, Greeley, Marumoto & Akinaka* of counsel) for Isuzu Motors, Ltd., defendant-appellee.

*Martin Anderson* and *David J. Dezzani* (*Jenks, Kidwell, Goodsill & Anderson* of counsel) for plaintiff-appellee.