ROYAL STATE NATIONAL INSURANCE COMPANY
AND ST. PAUL FIRE AND MARINE INSURANCE
COMPANY, Appellants, *v.* LABOR AND INDUSTRIAL
RELATIONS APPEAL BOARD, STATE OF HAWAII,
AND ROBERT M. GUSHIKEN, Appellees

No. 5014

June 28, 1971

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON,
JJ., AND CIRCUIT JUDGE LANHAM IN PLACE
OF KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY LEVINSON, J.

This case involves a workmen's compensation claim filed by the appellee, Robert M. Gushiken, on September 16, 1965. Mr. Gushiken is seeking compensation for: (1) alleged physical injuries incurred in an automobile accident which took place on January 28, 1965; and (2) mental injuries allegedly resulting from the aforementioned accident or from the stress and strain of his occupation, or from a combination of the two. At the time of the accident the appellee was employed by the appellant, Royal State National Insurance Co., to train prospective insurance agents. On January 28 Mr. Gushiken had left the company's premises to collect an overdue insurance premium. During the course of his journey his vehicle was struck on the left rear bumper by a service station jeep. The appellee described the accident as minor. Nevertheless on the following day he saw a physician because of neck pains.

During the months following the accident the appellee came into conflict with his supervisor who, on April 7, 1965, recommended to the company's agency committee that Gushiken be dismissed from his position as director of training. In a meeting attended by the appellee the agency committee voted to dismiss him, effective immediately. Following the meeting Gushiken visited his physician and was treated for neck pains. On the same day he was admitted to St. Francis Hospital, where he remained until April 18,

1965. On the morning of that day Gushiken unsuccessfully tried to commit suicide by slashing his wrists with a razor blade, as a result of which he was transferred to Queen's Hospital. There he received treatment until May 28, 1965 when, against the advice of his doctor, he released himself from the hospital's care.

The appellee's claim for compensation was denied by the Administrator of the State Department of Labor and an appeal was taken to the Labor and Industrial Relations Appeal Board. On October 11, 1968, the appeal board reversed the decision of the administrator and allowed the appellee's claim. The employer-appellant then appealed to the First Circuit Court, where a jury trial was begun on April 27, 1970. At the end of the appellant's case in chief the trial judge granted the appellee's motion for a directed verdict on the ground that the appellant had failed to prove, as a matter of law, either that the appellee's claim was not for a covered work injury, or that his injuries were willfully inflicted. On May 26, 1970 judgment was entered in favor of the appellee.

On appeal the appellant argues: (1) the trial court erred in directing a verdict in favor of the appellee; and (2) the trial judge's conduct during the proceedings deprived the appellant of its right to a fair trial. After a careful reading of the record we find that the appellant's second contention is without merit. We do agree, however, that the judgment must be reversed in part because on the issue of the appellee's physical injuries the trial court improperly withheld the case from the jury's consideration.

In directing a verdict in favor of the appellee the trial court held that the appellant had failed to rebut the statutory presumption, created by HRS § 386-85(1), that the appellee's claim was for a work injury covered by the Hawaii Workmen's Compensation Law. This presumption provides in relevant part:

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in

the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury.

This provision places on the employer both the burden of going forward with the evidence as well as that of persuasion. *Acoustic, Insulation & Drywall, Inc.* v. *Labor & Industrial Relations Appeal Board*, 51 Haw. 312, 316, 459 P.2d 541, 544, *rehearing denied*, 51 Haw. 632, 466 P.2d 439 (1970). Thus the claimant will win unless the employer produces "relevant and credible evidence of a quality and quantity" sufficient to convince a reasonable man that there exists a non-compensable alternative explanation for the injury. *Acoustic, Insulation & Drywall, Inc.* v. *Labor & Industrial Relations Appeal Board, supra.* The trial court held that as to each of the injuries alleged by the appellee, the appellant had failed, as a matter of law, to meet this burden. We believe that with respect to the appellee's physical injuries the trial court erred in this holding.

### I. THE STANDARD TO BE APPLIED
### IN DIRECTING A VERDICT

In *Stewart* v. *Budget Rent-A-Car Corp.*, 52 Haw. 71, 77, 470 P.2d 240, 244 (1970), this court laid down the standard to be applied by a trial judge in determining the appropriateness of a directed verdict.

A directed verdict may be granted only when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor.

Under this standard the court is not to weigh the evidence in considering the motion for a directed verdict. This is the province of the jury. The trial court merely determines the narrow question whether there is any evidence upon which a jury could properly proceed to find a verdict

favorable to the party opposing the motion. If such evidence exists then the motion must be denied. We now proceed to examine the evidence in the present case to ascertain if, when viewed most favorably to the appellant, it would support a judgment that the appellee's physical and mental injuries were non-compensable under the Workmen's Compensation Law.

## II. THE APPELLEE'S PHYSICAL INJURIES

In the court below the parties stipulated that the appellee's medical records, compiled by the St. Francis and Queen's hospitals, should be admitted into evidence. Neither of the parties placed any limitations upon the evidentiary purposes of these records. On appeal the appellant contends that the diagnostic opinions expressed in the hospital records rebut the presumption that the appellee suffered neck injuries as a result of the January 28 automobile accident.

The appellant directs attention to the April 17, 1965 report of the consulting neurological specialist, Dr. William Won, who after examining the appellee for cervical pain, stated: "He appears to feign much of his illness, and I am not convinced that he has actual pain in the areas that he describes." Based on this evidence, we agree with the appellant that a jury might properly refuse compensation because the appellee's neck injuries were fabricated.[1] Therefore, a directed verdict on this issue was improper.

## III. THE MENTAL INJURIES SUFFERED BY THE APPELLEE

A. *Mental Disabilities Arising Out of the Course of Employment are Compensable Under the Hawaii Workmen's Compensation Law.*

---

[1] The appellee argues that because the appellant had an opportunity to call the treating and consulting physicians as witnesses, but failed to do so, the evidentiary value of the hospital records is diluted. We disagree. It is irrelevant that the appellant did not call the physicians themselves to testify

We now turn to the mental collapse suffered by the appellee during his hospitalization at St. Francis Hospital. At the time of his collapse the appellee's condition was described by his physician as schizophrenia with suicidal tendencies. The physician's report states that this condition developed from anxiety depression ".much attributed to business pressure." The trial court awarded compensation to the appellee for these mental injuries.

In contesting the lower court's holding the appellant does not argue that the appellees' mental disability is not compensable under the Hawaii Workmen's Compensation Act. He contends only that sufficient evidence was adduced to avoid a directed verdict as to whether the appellee's mental collapse was attributable to the pressures of work. Nevertheless, we believe that. before deciding this issue it should first be determined whether the act recognizes the compensability of mental injuries arising from the pressures of work.

For recovery of workmen's compensation an employee must first establish that his claim is for a covered work injury as defined by HRS § 386-3. This section provides in relevant part:

> If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, his employer or the special compensation fund shall pay compensation to the employee or his dependents as hereinafter provided.

This provision reflects the policy of the Workmen's Compensation Law that an employee should be indemnified for all infirmities resulting from his employment. Thus compensation is awarded if the injury reasonably appears to have flowed from the conditions under which the employee is re-

---

because the neurosurgeon's recorded opinion is germane to the medical issues in the case and the jury may properly draw inferences on the basis of the written records alone. Boutang v. Twin City Motor Bus Co., 248 Minn. 240, 247-48, 80 N.W.2d 30, 37-38 (1956).

quired to work. *Holt v. Acme Mattress Co.*, 40 Haw. 660, 667 (1955).

HRS § 386-3 makes no differentiation between organic and psychic injuries arising out of the employment relationship and we do not believe this court should impose such a distinction. The legislature has chosen to treat work-related injuries as a cost of production to be borne by industry and, ultimately, through the consumption process, by the community in general. *Silva v. Kaiwiki Milling Co.*, 24 Haw. 324, 330 (1918). In today's highly competitive world it cannot be doubted that people often succumb to mental pressures resulting from their employment. These disabilities are as much a cost of the production process as physical injuries. The humanitarian purposes of the Workmen's Compensation Law require that indemnification be predicated not upon the label assigned to the injury received, but upon the employee's inability to work because of impairments flowing from the conditions of his employment.[2] *Carter v. General Motors Corp.*, 361 Mich. 577, 106 N.W.2d 105 (1960); Manson, *Workmen's Compensation and the Disabling Neurosis*, 11 Buff. L. Rev. 376, 386-87 (1961-62); *see also American National Red Cross v. Hagen*, 327 F.2d 559 (7th cir. 1964). We hold, therefore, that an employee suffers a work-related injury within the meaning of HRS § 386-3 when he sustains a psychogenic disability precipitated by the circumstances of his employment.

B. *The Trial Court Properly Directed the Verdict on the Issue of the Appellee's Mental Collapse.*

Once it is determined that the Hawaii Workmen's Compensation Law allows indemnification for a mental collapse arising from an employee's working conditions the burden is then placed on the employer to rebut the statutory presumption that a causal connection in fact exists between the collapse and the employment situation. *See Acoustic, Insulation*

---

[2]This view is supported by the act itself which defines disability to include "loss or impairment of a physical or mental function." HRS § 386-1.

*& Drywall, Inc. v. Labor & Industrial Relations Appeal Board, supra.* In the instant case this task is more difficult because the above-mentioned hospital records contain the medical opinion that the appellee's mental collapse was attributable to the pressures of work. Nevertheless, the appellant seeks to avoid the damaging effect of this evidence by contending that the medical opinion should be ignored by the court in considering whether direction of the verdict was proper. It is argued that this medical opinion is in conflict with the testimony of Gushiken's supervisor who asserted that the appellee was not overworked, and, therefore, under the test for a directed verdict announced in the *Stewart* case, *supra,* such unfavorable evidence must be disregarded. We disagree that the evidence on this issue is in conflict.

The testimony of the appellee's supervisor and the diagnostic opinion of Gushiken's physician are not in conflict on the issue of the causation of the appellee's mental collapse. The statement that the appellee's mental collapse was caused by the pressures of work is not equivalent to stating that he was overworked. One can succumb to the pressures of work even though he is not under any unusual exertion or strain. *See generally Awai v. Paschoal,* 43 Haw. 94 (1959). Under identical working conditions some employees may be predisposed to heart attacks, some may be more careless around machinery, and some may be susceptible to mental breakdowns. The employer must take the employee as he finds him. The expert opinion evidence of the appellee's treating physician established that the mental collapse was caused by the appellee's employment and the appellant failed to adduce any evidence to rebut this theory. Therefore, on this issue, the trial judge properly directed the verdict in favor of the appellee.

The judgment below is reversed in part and remanded for proceedings consistent with this opinion.

*Donald A. Beck* and *Edward C. Kemper III (Cades, Schutte, Fleming & Wright)* for appellant.

*Raymond J. Tam (Ikenaga, Tam & Pyun)* for appellee.