REALTY MART, INC., Plaintiff-Appellant, *v.* AINA ALII, INC., BISHOP DEVELOPMENT, INC., Defendants-Appellees, and HAWAIIAN ESCROW AND TITLE INC., Defendant

NO. 6103

FEBRUARY 14, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* In an action brought to recover a realtor's commission pursuant to a written contract, after completion of plaintiff's case in a jury trial the trial court directed a verdict for the defendant. We affirm.

The services for which plaintiff-appellant claims a commission were performed by its sole stockholder and principal broker, Ellen Ellison. Ellison became aware that appellee, Aina Alii, Inc., wished to sell a hotel property. Knowing that Income Builders, Inc. was looking for an investment, she mentioned appellee's hotel to Lester Irish, president of Income Builders, and was told to check it out. Ellison visited Byron Bishop, Aina Alii's vice president, and inquired whether the hotel was for sale, at what price and whether she would receive a commission if she brought a buyer. Bishop replied that the hotel was for sale at $3,200,000 and that if Ellison brought a buyer he would pay a 5% commission. Ellison obtained an appraisal of the hotel which Irish reviewed. A realtors standard form of Deposit, Receipt, Offer and Acceptance (DROA) was then prepared and signed by appellant, as broker, and Income Builders, as buyer. By this instrument, which was dated March 15, 1974, Income Builders offered to pay $3,000,000 in cash as the purchase price of the hotel upon a closing on or before April 30, 1974, and appellant acknowledged receipt of $500 on account of the purchase price. The DROA contained the following form prepared for the signature of appellee as seller:

> The undersigned Seller (accepts the foregoing offer and) agrees to sell and convey the property at the price and on the terms and conditions above set forth and to pay to Realty Mart, Inc., Broker, a commission of 5% of sales price for services rendered by said broker; provided, however, that in the event Buyer breaches this contract and Seller retains the deposit or deposits pursuant to paragraph 7 above, then all sums so retained by Seller shall be divided between Seller and Broker, one-half to each, provided that the Broker's half of said forfeited deposits shall not exceed the full amount of the agreed commission.

Ellison returned to Bishop with the DROA, which Bishop signed for appellee, first lining out the figure $3,000,000 and substituting as the purchase price the amount of $3,200,000. The change in price was later initialled by Irish, Bishop and Ellison. At some time during the process the following was inserted into the DROA and initialled in the same manner:

12. SPECIAL CONDITIONS:

(1) Offer subject to financing.

(2) Buyer to furnish seller with written loan commitment from a reliable lending institution within 15 calendar days.

Ellison did not participate further in negotiations between appellee and Income Builders, other than carrying documents back and forth between them. The transaction was not closed on April 30, 1974. On June 24, 1974, appellee and Income Builders signed a similar DROA form, prepared by the attorney for Income Builders, in which the purchase price was $2,973,000 to be paid by assumption of mortgages in the approximate principal amount of $2,168,000, payment of cash in the amount of $655,000 to be applied to payment of the debts of the hotel operation and delivery of notes of Income Builders in the remaining amount. Other special conditions were stated. The closing date was stated as July 15, 1974. The portion of the form first quoted above was revised by striking out all reference to the broker, so as to read only: "The undersigned Seller (accepts the foregoing offer and) agrees to sell and convey the property at the price and on the terms and conditions above set forth." The sale was consummated under the second DROA.

The initial deposit of $500, although stated to have been paid by Income Builders in the first DROA, was in fact paid by appellant from appellant's own funds. The second DROA also recited a deposit by Income Builders of $500, although no additional money was paid. At a later date, appellant received repayment of the $500.

Ellison testified that she requested from Bishop a "letter of intent" at the time of her first conversation with him with respect to the price and commission, and that in response Bishop said that he would "draw up something similar to

that." In Ellison's testimony she characterized a letter of intent as "something like a listing", which she did not have. At the time he signed the first DROA, Bishop gave Ellison a statement showing the manner in which the gross sales price of $3,200,000 would be applied in payment of appellee's liabilities and distribution to its stockholders. This statement showed the sales price reduced by a commission of $160,000 payable to appellant, leaving a net sales price for such application and distribution of $3,040,000. The statement was unsigned and was on the letterhead of Bishop Development, Inc., identified in the statement as an 87% stockholder of Aina Alii, Inc. Ellison testified that Bishop represented to her that the statement was furnished in lieu of a letter of intent.

The standard to be applied by the trial court in granting a motion for a directed verdict was set forth as follows in *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 77, 470 P.2d 240, 244 (1970).

A directed verdict may be granted only when after disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there is no evidence to support a jury verdict in his favor.

See also *Shannon v. Waterhouse*, 58 Haw. 4, 563 P.2d 391, (1977); *Royal State National Insurance Co. v. Labor and Industrial Relations Appeal Board*, 53 Haw. 32, 487 P.2d 278 (1971).

Appellant's complaint claimed the commission only under the first DROA and did not allege any other contract for its payment or other source of obligation. Appellant did not assert in the trial any claim based on another contract or promise, and no issue with respect to such a contract or promise was tried. It follows that our attention must be confined to the sufficiency of the first DROA to support appellant's claim. We thus exclude from our inquiry any tendency of other evidence to show a general employment of appellant to find a buyer, or a "listing" of the property with appellant, without suggesting that we see any evidence to that effect.

The first DROA is quite explicit with respect to the conditions upon which a commission is payable to appellant. Appellee promised to pay to appellant a commission of 5% of the purchase price of $3,200,000, or $160,000, for past services rendered by appellant, subject to the proviso that if Income Builders failed to fulfill its obligation as buyer and the deposit was retained it would be divided between appellant and appellee. Appellant has not contended that an obligation existed to pay the commission if Income Builders failed to complete the purchase and we do not think the DROA can be so read. The proviso clearly limits appellee's obligation to one-half of the deposit in that event. Since appellant's evidence shows the receipt by appellant of the whole of the deposit, appellee has discharged any obligation which it may have under the proviso.

We do not have the case of an agent employed to render services or to produce a result. In fact, the DROA does not evidence any employment of appellant to render any services. The promise is only to pay "for services rendered by said broker", with no suggestion of a continuing employment. Cases dealing with the revocation of an agency to accomplish the sale of real property are therefore not apposite, except by analogy. We note, however, that if the DROA were to be construed as an employment of appellant to accomplish the sale of the property upon the terms specified in the DROA, an obligation to pay the commission upon a sale at a lower price and different payment terms would arise only if it were shown that the sale at the lower price and altered terms was the result of a bad faith effort by appellee to defeat appellant's claim to a commission. Annot., Broker's right to commission where owner sells property to broker's customer at less than stipulated price, 46 A.L.R. 2d 848 (1956); RESTATEMENT (SECOND) OF AGENCY, § 445 (1958).

We see no evidence in the record from which the jury could have found that the lower price was negotiated with a view to depriving appellant of the commission. The fact that the parties raised a question in their negotiations with respect to the possibility that appellant might have a claim to a commission does not alone, in our opinion, support an inference of

fact that they were motivated in their negotiations by a purpose to arrive at a transaction which would be free from appellant's claim.

Since the evidence failed to support appellant's claim to a commission under the first DROA, the trial court did not err in directing a verdict for appellee.

Affirmed.

*David A. Nakashima (Dennis E. W. O'Connor and Erik R. Zen* on the briefs, *Hoddick Reinwald O'Connor & Marrack* of counsel) for plaintiff-appellant.

*Frank K. H. Kim* for defendants-appellees.

