34 P.3d 16

Neal M. TAMASHIRO, Petitioner/Cross–Respondent–Appellant,

v.

CONTROL SPECIALIST, INC., Respondent/Cross–Petitioner Employer–Appellee,

and

TIG Insurance Company, Respondent/Cross–Petitioner Insurance Carrier–Appellee.

No. 22569.

Supreme Court of Hawai'i.

Nov. 7, 2001.

Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos, and Rebecca L. Covert, Honolulu, on the briefs, for petitioner/cross-respondent-appellant Neal M. Tamashiro.

Robin R. Horner, Honolulu, on the briefs, for respondent/cross-petitioner-appellees Control Specialists, Inc. and TIG Insurance Company.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ.; with ACOBA, J., concurring separately.

Opinion of the Court by RAMIL, J.

Petitioner/cross-respondent-appellant Neal M. Tamashiro and respondent/cross-petitioner-appellees Control Specialist, Inc. and TIG Insurance Company, Inc. (together Employer) timely applied to this court to review the decision of the Intermediate Court of Appeals (ICA) in *Tamashiro v. Control Specialists, Inc.*, 97 Haw. 94, 34 P.3d 24 (Haw.Ct. App. 2001). In its published opinion, the ICA held: (1) that the Employer adduced substantial evidence so as to rebut the presumption, under HRS § 386–85(1) (1993), that Tamashiro was temporarily and totally disabled (TTD) from August 5, 1994 up to July 15, 1995; (2) that the Labor and Industrial Relations Appeals Board's (the Board) findings of fact were not clearly erroneous; and (3) that there was no "reasonable doubt" that Tamashiro was not TTD. Consequently, the ICA affirmed the Board's May 4, 1999 decision and order denying Tamashiro's claim for TTD benefits. Tamashiro petitions this court to reverse the ICA's opinion because, although the ICA correctly construed the word "any" in HRS § 386–85 to mean that the presumption applies to all proceeding conducted under the workers' compensation chapter, the ICA: (1) erroneously relied upon non-medical evidence in concluding that Tamashiro was not TTD; (2) misinterpreted the testimony of one of Tamashiro's physicians; and (3) erroneously applied the "substantial evidence" test under HRS § 386–85. According to Tamashiro, in cases where the testimony of witnesses conflict, the legislature has decided that the conflict should be resolved in favor of the Claimant. The Employer also petitions this court to vacate in part and affirm in part the ICA's opinion because the ICA: (1) erroneously applied the HRS § 386–85(1) presumption to an award of TTD benefits; and (2) erroneously applied a "reasonable doubt" analysis to an award of TTD benefits. We granted the applications for certiorari to clarify several aspects of the ICA's opinion. Specifically, we hold that: (1) the ICA erroneously applied the HRS § 386–85(1) presumption to the issue whether Ta-

mashiro was "able to resume work" after August 5, 1994 and up to July 15, 1995; (2) the ICA erroneously applied an additional "reasonable doubt" analysis to Tamashiro's ability to return to work; and (3) the Board's conclusion of law that Tamashiro was not TTD was supported by the findings of fact and was not erroneous.

## I. BACKGROUND

### A. Proceedings in the Department of Labor and Industrial Relations

The background of this case is set forth in detail in the ICA's opinion, *see Tamashiro*, at 96–102, 34 P.3d at 26–32, which we will not repeat here. However, the relevant background for purposes of our clarification of the ICA's analysis is briefly stated below.

On March 30, 1994, Tamashiro, a ninth-step apprentice electrician, injured his right shoulder while working for Control Specialist, Inc. (CSI). Approximately two weeks later, Tamashiro sought medical treatment from Jinichi Tokeshi, M.D. Dr. Tokeshi placed Tamashiro off work for the following two and one-half months. Tamashiro returned to work on August 1, 1994 and was laid off four days later, on August 5, 1994.

On October 25, 1994, Tamashiro filed a claim for workers' compensation benefits. The Employer refused to pay TTD benefits because, it asserted, Tamashiro was "capable of returning to work" and thus not totally disabled. In response, Tamashiro requested a hearing before the Labor and Industrial Relations Disability Compensation Division.

On June 19, 1995, following a hearing, the Director of the Department of Labor and Industrial Relations (Director) rendered a written decision and order. The Director found that (1) Tamashiro "[was] not capable of returning to his usual and customary work as an electrician" and (2) Tamashiro's job as an electrician "[was] one likely to require use of the arms detrimental to [Tamashiro's] condition." Consequently, the Director ordered the Employer to, *inter alia*, pay Tamashiro TTD benefits from August 4, 1994 and "ter-

minating at such time as is determined by the Director that such disability has ended." The Employer appealed the Director's decision to the Board.[1]

On July 15, 1995, surgery was performed on, and a ganglion cyst removed from, Tamashiro's right shoulder. Evidence adduced at the hearing and contained in the record indicates that the cyst likely formed as a result of the March 30, 1994 work injury. Due to its location in the shoulder, pressure from the cyst on Tamashiro's suprascapular nerve caused weakness and atrophy of the external rotator muscles.

On August 9, 1995, the Board issued a pretrial order stating that the sole issue to be determined was:

the period of [Tamashiro's] temporary total disability due to the March 30, 1994 work injury after August 5, 1994 and prior to [July 15, 1995,] the date of surgery.

Trial commenced before the Board on March 5, 1997 and was completed on June 17, 1997.

On May 4, 1999, the Board filed its decision and order. In its findings of fact, the Board expressly found that Tamashiro's testimony regarding, *inter alia* "his ability to return to work as an electrician" was "lacking in credibility." In its conclusions of law, the Board stated:

[Tamashiro] was not temporarily and totally disabled for work from August 5, 1994 and prior to the date of surgery, July 15, 1995, as a result of his work injury of March 30, 1994, because he was able to resume work in his usual and customary employment as an electrician.

Tamashiro appealed.[2]

## B.   *The Intermediate Court of Appeals*

On appeal, Tamashiro argued that the Board erred by relying on non-medical opinions and, more generally, by declining to "accept the opinions" of Tamashiro's witnesses.[3]

In the ICA's view, the "overarching issue" in the appeal was "whether [the Employer] adduced substantial evidence ... to overcome the presumption, under [HRS] § 386–85 (1993), that Tamashiro was totally dis-

---

1. HRS § 386–87 (1993) provides in pertinent part as follows:

   **§ 386–87.   Appeals to appellate board.**
   (a) A decision of the director shall be final and conclusive between the parties, except as provided in section 386–89, unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board or the department. In all cases of appeal filed with the department the appellate board shall be notified of the pendency thereof by the director. No compromise shall be effected in the appeal except in compliance with section 386–78.
   (b) The appellate board shall hold a full hearing de novo on the appeal.
   (c) The appellate board shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of any compensation case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

2. HRS § 386–88 (1993) instructs as follows:
   The decision or order of the appellate board shall be final and conclusive, except as provided in section 386–89, unless within thirty days after mailing of a certified copy of the decision or order, the director or any other party appeals to the supreme court subject to chapter 602 by filing a written notice of appeal with the appellate board. A fee in the amount prescribed by section 607–5 for filing a notice of appeal from a circuit court shall be paid to the appellate board for filing the notice of appeal from the board, which together with the appellate court costs shall be deemed costs of the appellate court proceeding. The appeal shall be on the record and the court shall review the appellate board's decision on matters of law only. No new evidence shall be introduced in the appellate court, except that the court may, if evidence is offered which is clearly newly discovered evidence and material to the just decision of the appeal, admit the same.

3. Tamashiro asserted the following four points of error on appeal: (1) the Board erroneously reached a legal conclusion that he was not TTD from work from August 5, 1994 to July 15, 1995; (2) the Board erred as a matter of law in concluding that non-medical opinion should be followed instead of medical expert testimony/opinion on the issue of whether Tamashiro remained TTD from work; (3) the Board erred by refusing to accept the uncontradicted testimony that the job descriptions of Tamashiro were changed by the Employer; and (4) the Board erred by refusing to accept the opinions of Dr. Tokeshi and Dr. Kan, who confirmed that Tamashiro could not perform regular duty work, and instead concluding that Tamashiro was not TTD.

abled from August 5, 1994 up to July 15, 1995." *Tamashiro*, at 102, 34 P.3d at 32 (citing *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 650–51, 636 P.2d 721, 727 (1981)) (footnote omitted). Accordingly, the ICA stated that "we may affirm the Board's conclusion that Tamashiro was not temporarily totally disabled if it was supported by substantial evidence demonstrating that he was able, despite his March 30, 1994 work injury, to perform the usual and customary duties of an electrician for CSI during the time period in question." *Tamashiro*, at 103, 34 P.3d at 33.

After reviewing the record, the ICA concluded that "the net weight of the evidence before the Board amounted to substantial evidence." *Tamashiro*, at 104, 34 P.3d at 34. Furthermore, "given that substantial evidence is contained in the record[,]" the ICA held that the Board's findings of fact were not clearly erroneous. *Id.*

As a final step in its analysis, the ICA asserted that "before we can affirm the Board's decision, *Akamine[ v. Hawaiian Packing and Crating Co.*, 53 Haw. 406, 495 P.2d 1164 (1972),] requires that we take our analysis one step further, in order to determine whether any *reasonable* doubt exists regarding the question of compensability." *Tamashiro*, at 104, 34 P.3d at 34 (citation and footnote omitted) (emphasis in original). The ICA ultimately concluded that there was no reasonable doubt and affirmed the Board's May 4, 1999 decision and order. *Id.* at 29.

## II. STANDARD OF REVIEW

■ Appellate review of the Board's decision is governed by HRS § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). "Under HRS § 91–14(g), COLs are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); FOFs are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Potter v. Hawaii Newspaper Agency*, 89 Hawai'i 411, 422, 974 P.2d 51, 62 (1999) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Konno v. County of Hawai'i*, 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997) (quoting *Bragg v. State Farm Mutual Auto. Ins.*, 81 Hawai'i 302, 305, 916 P.2d 1203, 1206 (1996)))) (brackets omitted).

## III. DISCUSSION

### A. The HRS § 386–85 Presumption

■ In Hawai'i, if an "employee suffers personal injury . . . by accident arising out of and in the course of employment," the injury is "covered" by the Workers' Compensation Law. HRS § 386–3 (Supp.2000). In applying the foregoing language, this court has adopted the work-connection approach to ascertaining whether injuries are compensable. *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 649, 636 P.2d 721, 726 (1981). Under the work-connection approach, an injury is covered, and thus compensable, if there is a "causal connection between the injury and any incidents or conditions of employment." *Id.* at 648, 636 P.2d at 725. Absent this "requisite nexus" between the injury and the employment, the injury is not compensable under HRS chapter 386. *Tate v. GTE Hawaiian Telephone Co.*, 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994); *Chung*, 63 Haw. at 647, 636 P.2d at 724–25.

HRS § 386-85(1) (1993) provides that, "[i]n any proceeding for the enforcement of a claim for compensation ... it shall be presumed ... [t]hat the claim is for a covered work injury." This presumption "applies to the 'work-relatedness' of an injury." *Korsak v. Hawai'i Permanente Medical Group*, 94 Hawai'i 297, 306, 12 P.3d 1238, 1247 (2000); *see also Tate*, 77 Hawai'i at 107, 881 P.2d at 1253 ("The employer may overcome the [section 386-85(1)] presumption only with substantial evidence that the injury is unrelated to the employment."); *Chung*, 63 Haw. at 650, 636 P.2d at 727 ("HRS § 386-85(1) creates a presumption in favor of the claimant that the subject injury is causally related to the employment activity."). This presumption of work-connectedness "applies in all proceedings pursuant to the workers' compensation chapter." *Korsak*, 94 Hawai'i at 306, 12 P.3d at 1247.

In applying the section 386-85 presumption to the "able-to-resume-work" issue, the ICA misapprehended the nature of the presumption, which relates solely to the work-connectedness of an injury. If an injury is compensable, the subsequent question whether, as a result of the injury, the claimant is temporarily or permanently, or partially or totally, disabled constitutes an entirely separate question. *See* HRS §§ 386-31 (1993) and 386-32 (Supp.2000). Our review of HRS chapter 386 finds no support for the ICA's expansive interpretation of section 386-85(1). Nor do prior decisions of this court lend support to the ICA's analysis. Beginning with *Acoustic, Insulation & Drywall, Inc. v. Labor and Indus. Relations Appeal Bd.*, 51 Haw. 312, 459 P.2d 541 (1969), this court has consistently applied the section 386-85(1) presumption to the question whether an injury is work-connected.[4]

In this case, the Employer conceded that Tamashiro's injury was compensable. As noted *supra*, the sole issue before the Board was whether Tamashiro was able to resume work between August 4, 1994 and July 15, 1995. As such, issues relating to the work-connectedness of the injury were neither before the Board nor the ICA on appeal. Because the section 386-85(1) presumption of work-connectedness was neither applicable nor relevant to any issue on appeal, we hold that, as a matter of law, the ICA erred in applying the presumption to the issue in this case.[5]

---

4. *See, e.g., Flor v. Holguin*, 94 Hawai'i 70, 81, 9 P.3d 382, 393 (2000) (section 386-85(1) mandated presumption that complainant's "injury by disease" is compensable work-connected injury); *Korsak*, 94 Hawaii at 307, 12 P.3d at 1248 (section 386-85(1) mandated presumption that a subsequent injury resulting from a primary compensable injury was work-connected); *Diaz v. Oahu Sugar Co.*, 77 Hawai'i 152, 157, 883 P.2d 73, 78 (1994) (where claimant conceded that injury was not work-related, section 386-85(1) presumption was not "triggered"); *Tate*, 77 Hawai'i at 107, 881 P.2d at 1253 (section 386-85(1) mandated presumption that claimant's knee injury was work-connected); *Chung*, 63 Haw. at 650, 636 P.2d at 726 (section 386-85(1) mandated presumption that heart attack was causally connected to claimant's work); *Lawhead v. United Air Lines*, 59 Haw. 551, 558, 584 P.2d 119, 124 (1978) (section 386-85(1) mandated presumption that complainant contracted influenza through employment); *Mitchell v. BWK Joint Venture*, 57 Haw. 535, 546-48, 560 P.2d 1292, 1299-1300 (1977) (section 386-85(1) mandated presumption that scrotal hydrocele was causally related to claimant's industrial accident); *DeFries v. Association of Owners, 999 Wilder*, 57 Haw. 296, 303, 555 P.2d 855, 860 (1976) (section 386-85(1) mandated presumption that knee injury was work-connected); *DeVictoria v. H & K Contractors*, 56 Haw. 552, 560, 545 P.2d 692, 699 (1976) (section 386-85(1) mandated presumption that claimant's back condition was work-connected); *Akamine v. Hawaiian Packing & Crating Co.*, 53 Haw. 406, 495 P.2d 1164 (1972) (section 386-85(1) mandated presumption that death from cardiovascular disease while at work was work-connected); *Royal State Nat'l Ins. Co. v. Labor and Indus. Relations Appeal Bd.*, 53 Haw. 32, 34, 487 P.2d 278, 280 (1971) (section 386-85(1) mandated presumption that complainant's injuries were "covered by the Hawai'i Workmen's Compensation Law."); *Acoustic, Insulation & Drywall, Inc. v. Labor and Indus. Relations Appeal Bd.*, 51 Haw. 312, 314, 459 P.2d 541, 543 (1969) (section 386-85(1) mandated presumption that death from heart disease and blood clot while at work was work-connected).

5. Specifically, the following analysis by the ICA is erroneous:

Because Tamashiro claimed workers' compensation benefits pursuant to HRS § 386-1(b) (1993), the presumption imposed by HRS § 386-85 applies. *Korsak*, 94 Hawai'i at 306, 12 P.3d at 1247 ("we construe the use of the word 'any' [in HRS § 386-85] to mean that the presumption applies in all proceedings pursuant to the workers' compensation chapter" (citation omitted)). Hence, the issue is whether

B. *The Board's Conclusion of Law that Tamashiro Was Not Temporarily and Totally Disabled Was Not Erroneous*

■ Due to the ICA's erroneous application of the section 386–85(1) presumption, *see supra*, the ICA did not review the Board's conclusion of law that Tamashiro was not TTD from August 4, 1994 up to July 15, 1995 under the appropriate standard, *i.e.*, *de novo*. *See* HRS § 91–14(g)(4); *Bumanglag v. Oahu Sugar Co., Ltd.*, 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (quoting *Tate*, 77 Hawai'i at 102–03, 881 P.2d at 1248–49). HRS § 386–31(b)(1995) provides in relevant part that "[w]here a work injury causes total disability not determined to be permanent in character, the employer, for the duration of the disability . . . shall pay the injured employee a weekly benefit[.]" The Employer argued, in essence, that because Tamashiro's injury did not cause total disability, the obligation imposed by section 386–31(b) was not triggered.[6] The only question before the Board was whether Tamashiro was, in fact, able to resume work during the relevant time period.

■ " 'Total disability' means disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market." HRS § 386–1 (1993). By administrative rule, an employee is "totally disabled" if he or she is "unable to complete a regular daily work shift on account of a work injury."[7] Workers' Compensation Related Administrative Rules § 12–10–21 (2000). Thus, if an employee is "capable of performing work in an occupation for which the worker has received previous training or for which the worker had demonstrated aptitude," he or she is not totally disabled. Workers' Compensation Related Administrative Rules § 12–10–1 (2000). In its conclusion of law, the Board concluded that Tamashiro "was not temporarily and totally disabled for work from August 5, 1994 and prior to the date of surgery, July 15, 1995, as a result of his work injury on March 30, 1994, because he was able to resume work in his usual and customary employment as an electrician."

■ As his first point of error, Tamashiro contends that the Board reached an erroneous "legal conclusion." Opening brief at 17. Tamashiro objects primarily to the weight and credibility accorded to certain testimony by the Board. Tamashiro argues that the Board erred by according substantial weight to the testimony of certain witnesses for the Employer and not according sufficient weight, in Tamashiro's view, to certain of his own witnesses. However, the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal. *State v. Jenkins*, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (citation omitted); *Bank of Hawaii v. Kunimoto*, 91 Hawai'i 372, 390–91, 984 P.2d 1198, 1216–17 (1999) (citing *In re Estate of Herbert*, 90 Hawai'i 443, 454, 979 P.2d 39, 50 (1999) (citation omitted)).

the presumption was rebutted by substantial evidence. *Chung*, 63 Haw. at 650–51, 636 P.2d at 727; *Freitas v. Pacific Contractors Company*, 1 Haw.App. 77, 85, 613 P.2d 927, 933 (1980). In *Akamine v. Haw'n Packing & Crating Co.*, 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972), the supreme court defined substantial evidence as "relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work connected." (Citations omitted.)

In this case, then, we may affirm the Board's conclusion that Tamashiro was not temporarily totally disabled if it was supported by substantial evidence demonstrating that he was able, despite his March 30, 1994 work injury, to perform the usual and customary duties of an electrician for CSI during the time in question.

*Tamashiro*, at 103, 34 P.3d at 33 (footnote omitted).

6. The instant case does not involve an attempt by an employer to terminate TTD benefits. As outlined by *Atchley v. Bank of Hawai'i*, 80 Hawai'i 239, 909 P.2d 567 (1996), HRS § 386–31(b) specifies two methods by which ongoing TTD payments may be terminated. Because the employer in this case disputes that the obligation to pay TTD benefits arose in the first instance, neither of these methods are applicable in the instant case.

7. HRS § 386–72 (1993) authorizes the director of labor and industrial relations to make rules "which the director deems necessary for or conducive to [HRS chapter 386's] proper application and enforcement."

Moreover, a conclusion of law will not be overturned if supported by the trial court's findings of fact and by the application of the correct rule of law. *Robert's Hawai'i Sch. Bus, Inc., v. Laupahoehoe Transp. Co. Inc.,* 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999). Following a thorough review of the record, the ICA concluded that the Board's findings of fact were not clearly erroneous. *Tamashiro,* at 104, 34 P.3d at 34. Following our own review of the record, we agree. In its finding of fact no. 40, the Board stated: "We find that [Tamashiro] was able to resume work from August 5, 1994 up to July 15, 1995." In light of the Board's findings of fact, and its correct application of applicable law, *see supra,* we hold that the Board's conclusion of law that Tamashiro was not TTD between August 5, 1994 and July 15, 1995 was not erroneous.

### C. *Reasonable Doubt Analysis*

Finally, the ICA erred by utilizing a "reasonable doubt" analysis to the question of whether Tamashiro was TTD. After finding substantial evidence and concluding that the Board's findings of fact were not clearly erroneous, the ICA stated: "However, before we can affirm the Board's decision, *Akamine* requires that we take our analysis one step further in order to determine whether any *reasonable* doubt exists regarding the question of compensability." (Footnote omitted, emphasis in original.)

A review of *Akamine* reveals the ICA's error. In January 1968, Edward K. Akamine collapsed at work. *Akamine,* 53 Haw. at 415, 495 P.2d at 1165. He was taken to Queen's Medical Center and pronounced dead due to "acute coronary insufficiency." *Id.* On appeal, this court considered whether the insurer adduced substantial evidence to overcome the section 386–85(1) presumption that Akamine's death due to "acute coronary insufficiency" was work-connected. *Id.* at 407–08, 495 P.2d at 1165–66. The court explained that "if there is reasonable doubt as to *whether an injury is work-connected,* the humanitarian nature of the statute demands that doubt be resolved in favor of the claim-

ant." *Id.* at 409, 495 P.2d at 1166 (emphasis added).

Thus, a plain reading of *Akamine* indicates that the "reasonable doubt" analysis, like the section 386–85(1) presumption, applies solely to the work-connectedness of an injury. *See also Korsak,* 94 Hawai'i at 308, 12 P.3d at 1249 (citing *Akamine* for the proposition that all "doubts" as to whether the claimant's back condition was due to pre-existing causes must be resolved in favor of the claimant); *Chung,* 63 Haw. at 651, 636 P.2d at 727 (citing *Akamine* for the proposition that "where there is a reasonable doubt as to whether an injury is work-connected, it must be resolved in favor of the claimant"); *DeFries v. Ass'n of Owners, 999 Wilder,* 57 Haw. 296, 305–306, 555 P.2d 855, 861 (1976) (explaining that the 'pervading doubt' as to the cause of Akamine's heart attack indicated "the absence of substantial evidence" to overcome the section 386–85(1) presumption).

In this case, and as discussed in section III.A., *supra,* the work-connectedness of Tamashiro's injury was not an issue on appeal. The Employer conceded at all stages of these proceedings that the injury to Tamashiro's shoulder arose out of and in the course of his employment. *See* HRS § 386–3. The Employer simply disputed Tamashiro's claim that, as a result of the injury, he was unable to resume work. Accordingly, the ICA erred in its interpretation and application of *Akamine* and by utilizing a "reasonable doubt" analysis under the facts of this case.

### IV. *CONCLUSION*

Subject to the foregoing, we affirm the ICA's opinion.

### CONCURRING OPINION OF ACOBA, J.

I do not fault the application by the Intermediate Court of Appeals (the ICA) of the Hawai'i Revised Statutes (HRS) § 386 85(1) (1993) presumption [1] to this case because less

---

1. HRS § 386–85 states in pertinent part:

> *In any proceeding for the enforcement of a claim for compensation under this chapter* it

than one year ago, this court said in no uncertain terms that "we construe the use of the word 'any' to mean that the presumption applies *in all proceedings conducted pursuant to the workers' compensation chapter.*" *Korsak v. Hawai'i Permanente Med. Group,* 94 Hawai'i 297, 306, 12 P.3d 1238, 1247 (2000) (emphasis added) (citation omitted). The proceedings in the instant case were undisputably conducted pursuant to the workers' compensation chapter. Bound by *Korsak,* the ICA was required to apply it and the presumption in the case before it, as it did. *See Tamashiro v. Control Specialists, Inc.,* at 102, 34 P.3d at 32 (Haw.Ct.App. 2001). What the decision adopted today does is to qualify the general proposition adopted in *Korsak.*

I view this decision as limited to the question of "whether [Petitioner/Cross–Respondent–Appellant Neal M.] Tamashiro was able to resume work between August 4, 1994 and July 15, 1995." [2] Majority opinion at 91, 34 P.3d at 21. I do not perceive that it otherwise limits the application of the HRS § 386–85(1) presumption, *see Bocalbos v. Kapiolani Medical Center,* 93 Hawai'i 116, 129, 997 P.2d 42, 55 (App.2000) (employer's obligation in event of work injury is to "furnish to the employee all medical care, services, and supplies as the nature of the injury requires" pursuant to HRS § 386–21 (emphasis omit-

> shall be presumed, in the absence of substantial evidence to the contrary:
> (1) That the claim is for a covered work injury[.]
> (Emphasis added.)

**2.** In his opening appellate brief, Tamashiro objected primarily to the type of evidence considered, and argued that (1) although refuted by Tamashiro in a hearing held pursuant to HRS § 386–31(b) (1993), the labor and industrial relations appeals board (the Board) erroneously relied upon lay opinions and employer-provided witnesses giving non-medical evidence, and (2) the Board disregarded uncontroverted medical testimony that Tamashiro was unable to return to work. In his petition for writ of certiorari, Tamashiro relies upon HRS § 386–31(b) and argues that § 386–31 is based purely on medical determinations. According to him, eligibility for temporary total disability (TTD) benefits is statutorily mandated under a "medical test," which Tamashiro defines as "when treating doctors release the injured worker to return to regular duty or to light duty; or when the injured worker['s]

ted), and that under HRS § 386–24, "medical services and supplies ... shall include such services, aids, appliances, apparatus, and supplies as are reasonably needed for the employee's greatest possible medical rehabilitation" (emphasis omitted)), or the "reasonable doubt" standard, *see Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 651, 636 P.2d 721, 727 (1981) (citing *Akamine v. Hawaiian Packing & Crating Co.,* 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972)).

condition(s) are stable." Termination of eligibility occurs where the employee's condition is stabilized. *See* HRS § 386–31(b)(1) (stating that "where the director determines based upon a review of medical records and reports and other relevant documentary evidence that an injured employee's medical condition may be stabilized and the employee is unable to return to the employee's regular job"). Thus, he argues that any non-medical evidence relied upon constitutes a "violation of the statutory provisions" and that "the issue of [his] entitlement to TTD benefits under a 'medi[c]al test' could only have been decided by 'medical experts' evidence pursuant to § 386–31(b), HRS."

However, in citing to Tamashiro's opening appellate brief ("Tamashiro contends that the Board reached an erroneous 'legal conclusion,'" majority opinion at 92, 34 P.3d at 22), Tamashiro's argument on certiorari is recharacterized in the instant decision as an objection "primarily to the weight and credibility accorded to certain testimony by the Board." *Id.* By this decision, it appears we have *sub silentio* determined that HRS § 386–31(b) is not applicable in this case.