916 P.2d 1203

In the Matter of the Claim of Laural BRAGG, Claimant–Appellant/Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and Wayne C. Metcalf,[1] Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai'i, Respondents–Appellees/Appellees.

No. 17937.

Supreme Court of Hawai'i.

May 8, 1996.

Christopher R. Evans, on the brief, Honolulu, for claimant-appellant/appellant Laural Bragg.

John Y. Yamano of McCorriston, Miho, Miller, Mukai, on the brief, Honolulu, for respondent-appellee/appellee State Farm Mutual Automobile Insurance Company.

Robert A. Marks, Former Attorney General, and John W. Anderson and David A. Webber, Deputy Attorneys General, on the brief, Honolulu, for respondent-appellee/appellee Wayne C. Metcalf, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai'i.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

1. When this matter came before the Department of Commerce and Consumer Affairs, Linda Chu Takayama held the position of insurance commissioner. While this case was pending, Takayama was replaced as commissioner by Wayne Metcalf. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1), Metcalf has been substituted automatically for Takayama as a party in the present case.

MOON, Chief Justice.

In this insurance case, stemming from a collision between an automobile and a motorcycle, claimant-appellant/appellant Laural Bragg appeals the First Circuit Court's affirmance of respondent-appellee/appellee insurance commissioner Wayne C. Metcalf's (the commissioner) final order. The commissioner, ruling in favor of respondent-appellee/appellee State Farm Mutual Automobile Insurance Co. (State Farm), held that, pursuant to Hawai'i Revised Statutes (HRS) chapters 431:10C and 431:10G, Bragg was not entitled to collect no-fault benefits from an automobile insurance policy issued by State Farm, which was applicable to the car that hit the motorcycle on which Bragg was a passenger, causing her injuries. On appeal, Bragg contends that the circuit court erred in affirming the commissioner's final order.

For the following reasons, we vacate the circuit court's affirmance of the commissioner's final order and remand with instructions that the commissioner enter an order holding that Bragg is entitled to receive no-fault benefits from the State Farm policy.

## I. BACKGROUND

On February 28, 1991, Bragg was a passenger on a motorcycle owned and operated by Mollie Anne Boyer. At the intersection of North King and River Streets, the motorcycle was involved in a collision with an automobile driven by Vicente Caballes. Bragg suffered injuries as a result of the accident and made a claim for no-fault benefits under Caballes's policy. The express terms of the policy issued by State Farm covering Caballes's vehicle provide that State Farm will pay benefits "in accordance with the No-Fault Act [2] for bodily injury." Boyer's motorcycle was uninsured, and there is no evidence in the record reflecting any insurance owned by Bragg.

On July 17, 1992, State Farm denied Bragg's claim. Bragg thereafter requested a hearing with the State Department of Commerce and Consumer Affairs to challenge the denial, and the parties agreed to submit the matter to the hearings officer via stipulated facts and memoranda. On July 13, 1993, the hearings officer issued findings of fact, conclusions of law, and a recommended order, which provided in pertinent part:

> The issue in the present case is whether a motorcycle passenger is entitled to receive no-fault benefits under the provisions of Hawaii Revised Statutes (HRS) Chapter 431:10C.
>
> After reviewing the statutory authorities cited by the parties, the Hearings Officer concludes that the repeal of HRS § 294-12.6(a)(2),[3] via Act 287, Session Laws of

**2.** The policy defines "No-Fault Act" as "Chapter 294 of the Hawaii Revised Statutes and any amendments." HRS chapter 294 was recodified as HRS chapter 431:10C. *See* 1987 Haw.Sess.L. Act 347.

**3.** HRS § 294-12.6 (1985) provided in pertinent part:

**Motorcycles and motor scooters excluded from chapter.**

(a) All motorcycles and motor scooters required to be registered under chapter 286 shall be exempt from chapter 294; provided that:

(1) No person shall drive a motorcycle or motor scooter upon any public street, road, or highway of this State at any time unless such vehicle is insured at all times under a liability insurance policy as provided in this section; and

(2) In the case of accidental harm arising out of a motorcycle or motor scooter accident to any passenger of said motorcycle or motor scooter, or any pedestrian, motorcycles and motor scooters will not be exempt from section 294-4, 294-6, and 294-10; and

(3) In the case of accidental harm arising out of an accident involving a motorcycle or motor scooter and a motor vehicle, the owner or operator of a motorcycle or motor scooter will not be exempt from section 294-6.

(b) The insurance policy required under this section shall provide insurance to pay on behalf of the owner or any operator of the insured vehicle sums which the owner or operator may legally be obligated to pay for injury, death, or damage to the property of others, except property owned by, being transported by, or in the charge of the insured which arise out of the ownership, operation, maintenance, or use of the vehicle:

(1) Liability coverage of not less than $25,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm;

(2) Liability coverage of not less than $10,000 for all damages arising out of injury to or destruction of property including motor vehicles and including the loss of use there-

Hawaii (1987), specifically precluded motorcycle passengers from obtaining no-fault benefits under HRS Chapter 294.

Thereafter, the motorcycle passenger exemption that was contained in HRS § 294–12.6(a)(2), was not included in the recodification of the no-fault laws in HRS Chapter 431:10C.

As such, the Hearings Officer concludes that [State Farm] did not improperly deny no-fault benefits to [Bragg].

. . . .

For the reasons set forth above, the Hearings Officer would recommend that the Commissioner find and conclude that [State Farm] properly denied [Bragg] no-fault benefits.

The commissioner filed the final order on September 2, 1993, which provided in pertinent part:

Upon review of the entire record of these proceedings, including [Bragg's] exceptions and [State Farm's] response, the Commissioner adopts the Hearings Officer's proposed decision as the Commissioner's final order.

Accordingly, the Commissioner finds and concludes that [Bragg], as the passenger on an uninsured motorcycle, was not entitled to receive no-fault benefits from [State Farm].

On September 23, 1993, Bragg appealed the commissioner's final order to the First Circuit Court, pursuant to HRS § 91–14 (1993)[4] and Hawai'i Rules of Civil Procedure (HRCP) Rule 72.[5] On March 7, 1994, the circuit court entered an order affirming the

of, but not including property owned by, being transported by, or in the charge of the insured, as a result of any one accident. (c) At the option of the owner, each insurer shall:
(1) Offer medical payment coverage up to $15,000 to pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, and necessary ambulance, hospital, professional nursing, and funeral services; and
(2) Offer an income disability plan.

4. HRS § 91–14 provides in pertinent part:
Any person aggrieved by a final decision and order in a contested case or by a preliminary

commissioner's final order. This timely appeal followed.

## II. *STANDARD OF REVIEW*

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision. This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*University of Hawai'i Professional Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995) (brackets and citations omitted).

HRS § 91–14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the this agency; or

(3) Made upon unlawful procedure; or

ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

5. HRCP Rule 72(a) provides in pertinent part:
Where a right of redetermination or review in a circuit court is allowed by statute, any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision, order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter.

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

█ Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6). *Smith v. State Dep't of Labor & Indus. Relations,* 80 Hawai'i 150, 153, 907 P.2d 101, 104 (1995). The sole issue on appeal—whether Bragg is entitled to no-fault benefits from Caballes's policy pursuant to HRS § 431:10C–304—is a question of law that is freely reviewable by this court. *Id.*

### III. *DISCUSSION*

A. *HRS § 431:10C–304 Entitles Passengers on a Motorcycle Injured in a Collision With an Automobile to Collect No–Fault Benefits from the Policy Applicable to the Car Involved in the Collision.*

█ Bragg contends that HRS § 431:10C–304 (1993) entitles her to claim no-fault benefits against Caballes's policy for her injuries received in the collision between Caballes's vehicle and the motorcycle on which she was a passenger. We agree.

HRS § 431:10C–304, entitled "obligation to pay no-fault benefits," sets out the insurer's statutory minimum duty to provide automobile no-fault coverage to all policyholders in Hawai'i and provides in pertinent part:

Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:

(1) *Except as otherwise provided in section 431:10C–305(d):*

(A) In the case of injury [6] arising out of a motor vehicle accident,[7] *the insurer shall pay,* without regard to fault, to the following persons who sustain accidental harm [8] as a result of the operation, maintenance, or use [9] of the vehicle, *an amount equal to the no-fault benefits payable for wage loss and other expenses to that person under section 431:10C–103(10)(A)(iii) and (iv) as a result of the injury:*

(i) *Any person,* including the owner, operator, occupant, or user of the insured motor vehicle; [10]

(ii) Any pedestrian (including a bicyclist); or

(iii) Any user or operator of a moped as defined in section 249–1.

(Emphases added.)

As previously noted, Caballes's insurance policy incorporated the provisions of HRS § 431:10C as part of its minimum coverage; therefore, the language of HRS § 431:10C–304 controls the minimum scope of coverage required to be provided to insured drivers in Hawai'i. Because Bragg qualifies as "any person" who suffered "accidental harm" arising out of Caballes's "use" of the insured "motor vehicle," a plain reading of HRS § 431:10C–304 supports coverage for Bragg under Caballes's policy.

Moreover, Bragg is not excluded from the scope of coverage set out by HRS § 431:10C–304 by the provisions of HRS

---

6. HRS § 431:10C–103(3) (1993) defines "injury" as "accidental harm not resulting in death."

7. HRS § 431:10C–103(9) (1993) defines "motor vehicle accident" as "an accident arising out of the operation, maintenance or use of a motor vehicle, including an object drawn or propelled by a motor vehicle."

8. HRS § 431:10C–103(1) (1993) defines "accidental harm" as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person."

9. HRS § 431:10C–103(13) (1993) defines "operation, maintenance or use" with respect to a motor vehicle as including in pertinent part "occupying, entering into and alighting from [the motor vehicle.]"

10. HRS § 431:10C–103(8) (1993) defines "motor vehicle" as "any vehicle of a type required to be registered under chapter 286, including a trailer attached to such a vehicle, but not including motorcycles and motor scooters."

§ 431:10C–305(d) (1993), which provide in pertinent part that:

> [T]he following persons are not eligible to receive payment of no-fault benefits:
>
> (1) Occupants of a motor vehicle other than the insured motor vehicle;
>
> (2) Operator or user of a motor vehicle engaging in criminal conduct which causes any loss; or
>
> (3) Operator of a motorcycle or motor scooter as defined in section 286–2.

As to subsections (1) and (2), as previously noted, the definition of "motor vehicle" specifically excludes motorcycles HRS § 431:10C–103. As to subsection (3), Bragg clearly is not an "operator" of a motorcycle. Therefore, as Bragg contends, and the commissioner does not disagree, a plain reading of HRS § 431:10C–304(1)(A)(i) requires State Farm to pay no-fault benefits to Bragg pursuant to Caballes's policy.

State Farm and the commissioner, however, both argue that HRS § 431:10C–304(1)(A)(i) does not afford coverage for motorcycle passengers because to interpret subsection (i) as mandating coverage for "any person" would render superfluous HRS § 431:10C–304(1)(A)(ii), which mandates coverage for pedestrians, and HRS § 431:10C–304(1)(A)(iii), which mandates coverage for moped users and operators.

 Although it is true that "a cardinal rule of statutory construction [is] that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can legitimately be found which would give force to and preserve all the words of the statute," *Dines v. Pacific Ins. Co., Ltd.*, 78 Hawai'i 325, 331, 893 P.2d 176, 182 (1995) (citation omitted), it is also true that, even when strictly construing a statute,

> our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words

of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Sato v. Tawata*, 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995) (citation, internal quotation signals, brackets, and ellipsis points omitted).

The relevant legislative history to HRS § 294–4 (1985), the predecessor to HRS § 431:10C–304, provides that "[i]t is the intent of your Committee that any person injured by an insured vehicle, *whether an occupant or non-occupant*, shall be entitled to basic reparations benefits." Hse. Stand.Comm.Rep. No. 187, in 1973 House Journal, at 837 (emphasis added). In essence, under the interpretation of HRS § 431:10C–304(1)(A)(i) urged by the appellees, because the term "any person" ostensibly includes pedestrians, bicyclists, and moped users and operators, the term "any person" cannot include motorcycle passengers. In other words, according to State Farm and the commissioner, "any person" does not mean "any person," but rather means only owners, operators, occupants or users of insured motor vehicles, pedestrians, bicyclists, and users and operators of mopeds. This interpretation of HRS § 431:10C–304(1)(A)(i), however, runs counter to the legislature's intent to include all persons injured due to accidental harm, whether occupant or non-occupant, within the scope of mandatory no-fault coverage.

Moreover, an analysis of the evolution of HRS § 431:10C–304(1)(A)(i) supports a literal reading of the term "any person." As previously noted, prior to 1987, an insurer's

statutory obligation to pay no-fault benefits in Hawai'i was set forth in HRS § 294–4, the predecessor to HRS § 431:10C–304. HRS § 294–4 provided in pertinent part:

> **Obligation to pay no-fault benefits.** Every no-fault and self-insurer shall provide no-fault benefits for accidental harm as follows:
>
> (1) Except as otherwise provided in section 294–5(c):
>
>> (A) In the case of injury arising out of a motor vehicle accident to *any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian (including a bicyclist), or any user or operator of a moped as defined in section 249–1, but not including any operator of a motorcycle or motor scooter as defined in section 286–2,* who sustains accidental harm as a result of the operation, maintenance, or use of the vehicle, the insurer shall pay, without regard to fault, to the person an amount equal to the no-fault benefits payable to the person as a result of the injury[.]

HRS § 294–4 (1985) (emphasis added). It is clear that, under HRS § 294–4, the term "any person" *included* "the owner, operator, occupant, or user of the insured motor vehicle, *or* any pedestrian (including a bicyclist), *or* any user or operator of a moped as defined in section 249–1, *but not including* any operator of a motorcycle or motor scooter." (Emphases added.) So phrased, the specific references to each of the named persons in the statute modified, and were subordinate to, the term "any person" and provided the reader with an interpretational aid in determining the scope of the term; the terms accordingly did not *limit* the scope of "any person."

Thereafter, when the legislature recodified Hawai'i's insurance scheme into HRS chapter 431 and rearranged the language of HRS § 294–4, it did not intend to make any substantive changes. The legislative history to HRS § 431:10C–304 provides:

> In 1955 [sic, 1985], the Hawaii Legislature provided funds to the Insurance Commissioner for a comprehensive review of the State's insurance laws. This bill is part of a triad of insurance legislation being proposed as a result of that review. This bill consolidates the proposed *technical, non-substantive changes* to the Hawaii Insurance Code and separates them from the substantive changes which are being proposed in other legislation. *Although they are substantively insignificant,* these changes will greatly improve the quality of the Code and afford the Hawaii consumer, the insurer, and the regulator much better comprehension of the Code.

Hse.Stand.Comm.Rep. No. 763, in 1987 House Journal, at 1461 (emphases added). The basis for State Farm's and the commissioner's restrictive interpretation of HRS § 431:10C–304(1)(A)(i) stems from the "technical, non-substantive" changes made by the legislature, that is, the separation of each of the groups of people into subsections (i), (ii), and (iii). The method by which the legislature separated the groups seemingly renders each subsection of equal significance; however, in context with HRS § 294–4, its legislative history, and, most notably, the legislature's admonition that the 1987 amendments are "substantively insignificant," State Farm and the commissioner's narrow interpretation of HRS § 431:10C–304(1)(A)(i) must yield to a more expansive interpretation consistent with the legislature's general remedial purposes in implementing a no-fault scheme. *See* Hse.Conf.Comm.Rep. No. 13, in 1973 House Journal, at 1219 ("The purpose of this bill, as amended herein, is to ... [p]rovide for a speedy, adequate and equitable reparation for those injured or otherwise victimized[.]"); Sen.Conf.Comm.Rep. No. 4, in 1973 Senate Journal, at 635–36 ("The purpose of this bill, as amended herein, is to ... provide for insurance coverage for all who require it, at a cost within the reach of every licensed driver[.]"). *See also Dines,* 78 Hawai'i at 333, 893 P.2d at 184 (holding that, in the uninsured motorist insurance context, the separation of statutory provisions dealing with motorcycle insurance into HRS ch. 431:10G "does not limit the rights" of insureds to coverage mandated by HRS ch. 431:10C).

In view of the foregoing, we therefore reject State Farm and the commissioner's position and hold that the term "any person," as used in HRS § 431:10C–304(1)(A)(i) includes motorcycle passengers.

B. *The Evolution and History of Hawai'i's Statutory Provisions Dealing with Motorcycle No–Fault Insurance is Irrelevant in the Present Case.*

State Farm also goes to great lengths to describe the many changes through which Hawai'i's statutory provisions dealing with no-fault insurance for motorcycles have passed, in support of its assertion that, because no-fault coverage was required specifically for motorcycle passengers in 1985, then was eliminated in 1987, then was reinstated in 1988, and finally was eliminated again in 1989, Bragg, as a motorcycle passenger, is not entitled to no-fault benefits under Caballes's policy. The commissioner agreed with this argument, premised her holding in favor of State Farm on this basis, and the circuit court affirmed. We disagree.

The infirmity of this argument is that it ignores the distinction between the scope of no-fault coverage mandated by HRS § 431:10C–304(1)(A)(i) for *automobiles,* and the scope of—or the requirement at all for—no-fault coverage for *motorcycles.* At the outset, it is clear that HRS § 294–12.6(a)(2), relied upon by both State Farm and the commissioner and since repealed, sets out minimum insurance requirements applicable to policies of insurance for *motorcycles.* As previously noted, HRS § 294–12.6 (1985) provided in pertinent part:

**Motorcycles and motor scooters excluded from chapter.** (a) *All motorcycles and motor scooters* required to be registered under chapter 286 shall be exempt from chapter 294; provided that:

(1) No person shall drive a motorcycle or motor scooter upon any public street, road, or highway of this State at any time unless such vehicle is insured at all times under a liability insurance policy as provided in this section; and

(2) In the case of accidental harm *arising out of a motorcycle or motor scooter accident* to any passenger of said motorcycle or motor scooter, or any pedestrian, motorcycles and motor scooters will not be exempt from section 294–4, 294–6, and 294–10; and

(3) In the case of accidental harm arising out of an accident involving a motorcycle or motor scooter and a motor vehicle, the owner or operator of a motorcycle or motor scooter will not be exempt from section 294–6.

(Emphases added.)

Moreover, the legislative history to HRS § 294–12.6 makes clear that what was at issue in the passage of the statute was the costs and benefits associated with the imposition of a mandatory insurance requirement on *motorcycles:*

The purpose of this bill was to *remove motorcycle and motor scooters from the requirements of Chapter 294,* Hawaii Revised Statutes, the Motor Vehicle Accident Reparations Act. . . .

This bill would allow persons to operate motorcycles and motor scooters on public streets *without the necessity of obtaining and maintaining no-fault motor vehicle insurance.* However, in order to afford protection to the general public from the negligent or reckless operation of motorcycles and motor scooters, the bill would require insurance coverage for bodily injury to others in the amount of $25,000 and property damage insurance in the amount of $10,000. *Persons operating a motorcycle or motor scooter without such insurance* would be subject to a fine of up to $1,000, imprisonment for thirty days, or suspension of driver's license for one year, or any combination of the above penalties.

In effect, the bill *would allow persons to operate motorcycles and motor scooters without insurance coverage* for personal injuries to themselves, or for their wage loss or medical expenses. Further, *an owner or operator* of a motorcycle or motor scooter who is involved in an accident with an insured motor vehicle would not be able to collect no-fault benefits from the insurer of the insured motor vehicle.

Your Committee recognizes *the problem faced by owners and operators of motorcycles and motor scooters with respect to high no-fault insurance premium rates.* This bill is intended to afford some measure of relief to such persons.

Sen.Conf.Comm.Rep. No. 49, in 1985 Senate Journal, at 876 (emphases added). *See also* Hse.Conf.Comm.Rep. No. 56, in 1985 House Journal, at 925 (same).

The same is true of the subsequent amendments to HRS § 294–12.6. *See, e.g.,* Sen. Conf.Comm.Rep. No. 26, in 1987 Senate Journal, at 821 ("The purpose of this bill is to reduce the high cost of *motorcycle and motor scooter insurance,* and to increase the availability of motorcycle and motor scooter liability insurance coverage." (Emphasis added.)); Sen.Conf.Comm.Rep. No. 53, in 1989 Senate Journal, at 780 ("The purpose of this bill is to create a new article in the Insurance Code, Chapter 431, Hawaii Revised Statutes, to include provisions applicable to *motorcycle and motor scooter insurance."* (Emphasis added.)).

Moreover, unlike *Dines,* which involved the *operator* of a motorcycle, who voluntarily eschewed primary no-fault coverage for accidental injuries to himself while operating his motorcycle, the present case involves a *passenger,* who did not forego an opportunity to insure herself, and who was in turn injured by an accident with an automobile.[11]

The issue in the present case is whether HRS § 431:10C–304(1)(A)(i) requires State Farm to provide coverage to Bragg under Caballes's policy of *automobile* no-fault insurance. Thus, whether motorcycle passengers were or are required to be covered on

policies of *motorcycle* no-fault insurance is irrelevant and of no consequence to the disposition of the controversy at issue. Accordingly, we hold that the circuit court erred in upholding the commissioner's final order in favor of State Farm based on the rationale that the repeal of HRS § 294–12.6 relieved State Farm of the obligation to pay Bragg no-fault benefits for her injuries suffered in the accident involving Caballes's vehicle in the present case.

## IV. CONCLUSION

For the foregoing reasons, the circuit court's affirmance of the commissioner's final order is vacated, and the case is remanded with instructions that the commissioner shall enter an order holding that Bragg is entitled to receive no-fault benefits for her injuries suffered in the present case.

---

**11.** We note that the distinction between the scope of mandatory coverage applicable under HRS chapters 431:10C and 431:10G, emphasized by the issue in the present case, is also consistent with the interpretation of the legislative history pertaining to motorcycle insurance as taken by the dissenting opinion in *Dines,* in its recognition that "[t]he legislative history [of the provisions pertaining to motorcycles] clearly indicates that Hawai'i's motor vehicle no-fault laws ... [do] not cover accidental injuries by persons *operating* a motorcycle or motor scooter." *Dines,* 78 Hawai'i at 342, 893 P.2d at 193 (Ramil, J., dissenting) (emphasis added). However, the result that we reach today is in no way inconsistent with the rationale of the majority opinion in *Dines.*

At issue in *Dines* was the question "whether, under Hawai'i law, a named insured under an *automobile* liability insurance policy, who is injured by a hit-and-run driver, can be entitled to [uninsured motorist] benefits thereunder when the named insured is operating a *motorcycle* at the time of his accident." *Id.* at 326, 893 P.2d at 177 (emphases in original). For the reasons set forth by the *Dines* majority, the answer to the question was "yes." There is no dissonance between the *Dines* result and the fact that an injured passenger on an uninsured motorcycle is entitled to claim no-fault insurance benefits from the owner of an insured automobile with which the motorcycle has collided.