983 P.2d 200

**Cherie BRIGHT, individually and as Guardian Prochein Ami for Kalani Bright, Plaintiffs–Appellants,**

v.

**FIRST INSURANCE COMPANY OF HAWAII, LTD., a Hawai'i corporation, Defendant–Appellee**

**No. 22127.**

Intermediate Court of Appeals of Hawai'i.

Aug. 5, 1999.

Calvin K. Murashige (Shiraishi & Murashige) Lihue, (withdrew as co-counsel as of June 28, 1999) and Melvin Y. Agena, on the briefs, Honolulu, for plaintiffs-appellants.

Thomas E. Cook, and Bradford F.K. Bliss (Lyons, Brandt, Cook & Hiramatsu) on the briefs, Honolulu, for defendant-appellee.

WATANABE, ACOBA, and LIM, JJ.

### Opinion of the Court by ACOBA, J.

We hold that under the provisions of Hawai'i Revised Statutes (HRS) chapter 431:10C (1993), entitled "the Hawai'i Motor Vehicle Insurance Law," otherwise referred to as the no-fault law (the no-fault law), and HRS chapter 431:10G (1993 and Supp.1997), entitled "Motorcycle and Motor Scooter Insurance," a bicyclist who suffers personal injury in an accident with a motorcycle is not entitled to no-fault benefits, but may seek redress for such injuries in a tort action.

In consonance with the foregoing proposition, the Circuit Court of the Fifth Circuit (the court) granted the motion for summary judgment filed by Defendant–Appellee First Insurance Company of Hawaii, Ltd. (Appellee) against the claims of Plaintiffs–Appellants Cherie Bright (Cherie), individually and as Guardian Prochein Ami for Kalani Bright, her minor child, (Kalani) (collectively, Appellants). Accordingly, we must affirm the court's October 5, 1998 order granting the said motion.

### I.

The following facts are not in dispute. On June 23, 1994, while riding a bicycle, Kalani was struck by an uninsured motorcycle operated by an unlicensed driver. As a result, Kalani sustained injuries which included a basal skull fracture, permanent hearing loss, and multiple abrasions and lacerations. At the time of the accident, Kalani, as a "resident relative," was a "covered person" under the "Personal Auto Policy" (the policy) issued by Appellee to Cherie and Benjamin Bright.

A claim for no-fault benefits was filed with Appellee on behalf of Kalani.[1] On August 4, 1994, Appellee denied payment of no-fault benefits. The denial of benefits was based solely on a review of the no-fault law. In its letter denying coverage, Appellee explained its denial was based on HRS §§ 431:10C–103(8), (9), and –304(1)(A).[2]

On June 24, 1997, Appellants filed their complaint against Appellee, alleging outrageous breach of an insurance contract and breach of the covenant of good faith and fair dealing. They prayed for judgment against Appellee for damages and "such other and future relief as [the c]ourt deems just and proper."

Appellee filed a motion for summary judgment on October 31, 1997, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rules 7 and 56(b). It argued that Appellants were not entitled to recovery because both the policy and the no-fault law precluded coverage. In their memorandum opposing Appellee's summary judgment motion, Appellants contended that "[w]hile there may not be genuine issues of fact in this case ..., there are certainly legal issues regarding Kalani['s] ... entitlement to no-fault coverage which preclude [Appellee's m]otion for [s]ummary [j]udgment from being granted."

On October 5, 1998, the court issued its order granting Appellee's summary judgment motion.

### II.

An order for summary judgment is reviewed *de novo*. "On review of a summary judgment proceeding, the standard [appellate] court[s] should apply is identical to that employed by the trial court." *Iuli v. Fasi*, 62 Haw. 180, 184, 613 P.2d 653, 656 (1980) (citations omitted). Summary judgment is properly granted when there are no genuine

---

1. The record does not provide the date of the claim.

2. Defendant–Appellee First Insurance Company of Hawaii, Ltd. (Appellee) made no mention of any exclusion under the policy provisions as a reason for denial of no-fault benefits.

issues of material fact and the movant demonstrates that he [or she] is entitled to judgment as a matter of law. *Bidar v. Amfac, Inc.,* 66 Haw. 547, 553, 669 P.2d 154, 159 (1983) (citations omitted).

Appellants do not raise any genuine issues of material fact but base their appeal solely on a question of law. On appeal, Appellants maintain that "[t]he ... court erred in granting Appellee's [m]otion for [s]ummary [j]udgment and in ruling that [the no-fault law] bars a pedestrian or bicyclist from receiving no-fault benefits." [3]

## III.

The purpose of the no-fault law, in relevant part, "is to ... [c]reate a system of reparations for accidental harm and loss arising from *motor vehicle accidents* [.]" HRS § 431:10C–102(a)(1) (emphasis added). In that connection, HRS § 431:10C–104(a) and (b) require that no-fault insurance be obtained for all "motor vehicles." HRS § 431:10C–104(a) and (b) state:

(a) Except as provided in [HRS § ] 431:10C–105,[4] no person shall operate or use *a motor vehicle* upon any public street, road or highway of this State at any time *unless such motor vehicle is insured at all times under a no-fault policy.*

(b) Every owner *of a motor vehicle* used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

(Emphases added.)

No-fault benefits, however, are only extended to accidental harm arising out of the "operation, maintenance, or use of a motor vehicle." HRS § 431:10C–303(a) provides that "[i]f the accident causing accidental harm occurs in this State, every person insured under this article, and such person's survivors, suffering loss from accidental harm *arising out of the operation, maintenance, or use of a motor vehicle, has a right to no-fault benefits.*" (Emphasis added.)

At the time of the incident, Kalani was not involved in the "operation, maintenance, or use" of his relative's motor vehicle and therefore was not entitled to no-fault benefits on that basis. Kalani, however, was, by statutory definition, a "pedestrian" who would have been entitled to no-fault benefits were he involved in a "motor vehicle accident." HRS § 431:10C–304(1)(A) states:

**Obligation to pay no-fault benefits.** ... Every no-fault insurer shall provide no-fault benefits for accidental harm as follows:

(1) Except as otherwise provided in [HRS § ] 431:10C–305(d):[5]

(A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the following persons who sustain accidental harm as a result of the operation, maintenance or use of the vehicle, an amount equal to the no-fault benefits payable for wage loss

---

**3.** Since, on appeal, Plaintiffs–Appellants Cherie Bright (Cherie), individually and as Guardian Prochein Ami for Kalani Bright, her minor child (Kalani), (collectively, Appellants) question only the proper interpretation of Hawai'i Revised Statutes (HRS) §§ 431:10C–103 (1993) and –303(a) (1993), we are not called upon to review the terms of the policy involved, including any provisions relating to uninsured third parties.

**4.** HRS § 431:10C–105 (1993) applies to self-insured vehicles.

**5.** HRS § 431:10C–305(d) (1993) states:

(d) The following persons are not eligible to receive payment of no-fault benefits:
(1) Occupants of a motor vehicle other than the insured motor vehicle;
(2) Operator or user of a motor vehicle engaging in criminal conduct which causes any loss; or
(3) Operator of a motorcycle or motor scooter as defined in [HRS § ] 286–2.
Provided, that this subsection does not preclude recovery in other capacities under a no-fault policy covering a vehicle which the person did not occupy at the time of the accident. Subsection (d) is not raised on appeal by any of the parties.

and other expenses to that person . . . as a result of the injury:

    (i) Any person, including the owner, operator, occupant, or user of the insured vehicle;

    (ii) <u>Any pedestrian (including a bicyclist)</u> [.]

(Boldfaced emphases in original; underscored emphases added.)

■ The phrases "(including a bicyclist)" and "operation, maintenance or use of a motor vehicle" were added to the foregoing statute in 1975. The change was made to clarify the legislature's intent that bicyclists, like pedestrians, be afforded no-fault benefits in any accident involving the operation, maintenance, or use of a motor vehicle:

> Subsections (1)(A) and (B) [of HRS § 294–4, the predecessor to HRS § 431:10C–304] provide that a pedestrian must be struck by a vehicle to be eligible for no-fault benefits. The amendment to these sections *expands the term "pedestrian" to include a bicyclist.* This is primarily a technical change for clarity, since the practice to date has been to consider a bicyclist to be a pedestrain [sic] for purposes of applying no-fault law and benefits. *The law presently requires that an injured pedestrian be "struck by" a motor vehicle in order to obtain no-fault benefits.* There is nothing in the law which covers injury to a pedestrian in an accident which might be caused by a motor vehicle, but in which there is no physical contact between the pedestrian and the vehicle. The situation in which the injured pedestrian strikes the vehicle is also not covered. In the latter two cases, these pedestrians might be denied no-fault benefits. *The amendments to these subsections, therefore, expand the present law by providing benefits to injured pedestrians through the mere involvement (operation, maintenance or use) of a motor vehicle.*

Conf. Comm. Rep. No. 20, in 1975 Senate Journal, at 855 (emphases added).

■ But Kalani's unfortunate encounter with a motorcycle is excluded from an insurer's obligation to provide no-fault benefits because his injuries did not "arise[ ] out of a motor vehicle accident." HRS § 431:10C–304(1)(A). In that connection, HRS § 431:10C–103 sets forth the following relevant definitions:

    (1) Accidental harm means bodily injury, death, sickness, or disease caused by a *motor vehicle accident* [.]

    . . . .

    (8) Motor vehicle means any vehicle of a type required to be registered under [HRS] chapter 286, including a trailer attached to such a vehicle, but *not including motorcycles* and motor scooters.

    (9) Motor vehicle accident means an accident arising out of the operation, maintenance, or use of a *motor vehicle,* including an object drawn or propelled by a motor vehicle.

(Emphases added.)

Because motorcycles are excluded from the definition of "motor vehicle" under HRS § 431:10C–103(8) and inferentially under HRS § 431:10C–103(9), Kalani was not involved in a "motor vehicle accident" according to the definitions set forth in HRS § 431:10C–103. For the purposes of HRS § 431:10C–303(a), his injuries, therefore, were not caused by a motor vehicle accident to which no-fault benefits would attach. Thus, we must hold that Appellants are not entitled to no-fault benefits afforded under HRS § 431:10C–303(a).

### IV.

We observe that HRS § 431:10G–102 (1993), entitled "Conditions of operation and registration of motorcycles and motor scooters," provides that "[n]o person shall drive a motorcycle or motor scooter upon any public street, road, or highway of this State at any time unless such motorcycle or motor scooter is insured at all times *under a liability policy* as provided in [HRS § ] 431:10G–301." (Emphasis added.) According to HRS § 431:10G–301(a) (Supp.1997), the liability policy must provide coverage for injury arising out of, *inter alia,* the ownership, operation, or use of a motorcycle:

> *An insurance policy covering a motorcycle* or motor scooter *shall provide insur-*

*ance* in the ... *amounts to pay, on behalf of the owner or any operator of the insured motorcycle* or motor scooter, *sums that the owner or any operator may legally be obligated to pay for injury,* death, or damage to the property of others, except property owned by, being transported by, or in charge of the insured *that arise out of the ownership, operation, maintenance, or use of the motorcycle* or motor scooter[.]

(Emphases added.) The failure to obtain such liability insurance is a crime. HRS § 431:10G–108 (1993) provides that any violator of HRS chapter 431:10G "shall be subject to a citation by the police and shall be subject to a nonsuspendable fine of not less than $100 nor more than $1,000, thirty days imprisonment, a one year driver's license suspension, or any combination thereof, for each violation."

▪ HRS § 431:10G–101 (1993) defines "motorcycle accident" as "an accident arising out of the operation, maintenance, or use of a motorcycle, but not involving a motor vehicle." [6] The legislature thus sought, in HRS chapter 431:10G, to provide insurance relief for a person such as Kalani, who is injured by another's ownership, operation, or use of a motorcycle, through the mechanism of mandatory third-party liability insurance coverage [7] but not through any additional protection afforded by no-fault benefits coverage.

## V.

Nevertheless, Appellants maintain that the exclusion of motorcycle accidents from the no-fault law was not intended to leave a class of innocent victims unprotected by that statute. Appellants rest on their reading of legislative history relating to amendments of HRS chapter 294 (Supp.1973), the predecessor of the no-fault law. Similar to the no-fault law, "[t]he purpose of [HRS chapter 294 was] to create a system of reparations for injuries and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294–1. Until 1985, "motor vehicle" was defined under HRS chapter 294 as "any vehicle of a type required to be registered under [HRS] chapter 286, *including a vehicle of a type with less than four wheels* or a trailer attached to a vehicle." HRS § 294–2(8) (Supp. 1984) (emphasis added).

However, in 1985, the definition of motor vehicle was amended to read, " 'Motor vehicle' means any vehicle of a type required to be registered under [HRS] chapter 286, including a trailer attached to such a vehicle, *but not including motorcycles and motor scooters.*" HRS § 294–2(8) (1985) (emphasis added). Correspondingly, HRS § 294–12.6(a) (1985) excluded motorcycles, along with motor scooters, from the no-fault requirements of HRS chapter 294 except in accidents involving the passengers of such vehicles or pedestrians:

All motorcycles and motor scooters required to be registered under [HRS] chapter 286 *shall be exempt from [HRS] chapter 294; provided that:*

(1) No person shall drive a motorcycle or motor scooter upon any public street, road, or highway of this State at any time unless such vehicle is insured at all times under a liability insurance policy as provided in this section; and

(2) *In the case of accidental harm arising out of a motorcycle* or motor scooter *accident to* any passenger of said motorcycle or motor scooter, or *any pedestrian,* motorcycles and motor scooters *will not be exempt from [HRS §§ ] 294–4, 294–6, and 294–10;* [8] and

(3) In the case of accidental harm arising out of an accident involving a

---

**6.** "Motor vehicle" is not defined in HRS chapter 431:10G (1993 and Supp.1997).

**7.** A third-party policy "is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit." *Best Place, Inc. v. Penn America* *Ins. Co.,* 82 Hawai'i 120, 124 n. 4, 920 P.2d 334, 338 n. 4 (1996).

**8.** HRS § 294–4 (1985) defined provisions for no-fault benefits for accidental harm; HRS § 294–6 (1985) provided circumstances of abolition of tort liability; HRS § 294–10 (1985) set forth requirements of policy coverage.

motorcycle or motor scooter and a motor vehicle, the owner or operator of a motorcycle or motor scooter will not be exempt from [HRS §] 294–6.

(Emphases added.) The purpose of the 1985 amendment was thus, in part, to preserve no-fault coverage for pedestrians injured in motorcycle accidents: [9]

> The purpose of [the amendment] was to *remove motorcycle and motor scooter operators from [c]hapter 294,* [HRS], the Motor Vehicle Accident Reparations Act.
>
> . . . .
>
> Your Committee is concerned with (1) *keeping no-fault coverage intact in cases where a motorcycle rider strikes a pedestrian, or a passenger is injured;* (2) continuing coverage for property damage and personal injury liability for pedestrians and riders as in no-fault; and (3) *maintaining the threshold amount, under no-fault insurance, for those pedestrians or passengers injured by a motorcycle rider.*
>
> In weighing the different concerns and implications, your Committee has amended section 1 of the bill by restructuring subsection (a) and adding the provision "in the case of accidental harm arising out of a motorcycle or motor scooter accident *to* any passenger of said motorcycle or motor scooter, or *any pedestrian, motorcycles and motor scooters will not be exempt from [HRS §§] 294–4, 294–6 and 294–10* . . . ." Your Committee recognizes that the mechanism by which uninsured motorists and motorcyclists can be detected and penalized must be strengthened.

Sen. Stand. Comm. Rep. No. 688, in 1985 Senate Journal, at 1180–81 (emphases added).

In 1987, HRS chapter 294 was repealed and re-incorporated into HRS chapter 431 (Spec.Pamph.1987). 1987 Haw. Sess. L. Act 347, §§ 1 and 2, at 1. At that time, part V of HRS chapter 431:10C governed motorcycles and motor scooters. HRS § 431:10C–501(a) (Spec.Pamph.1987) included the 1985 amendment discussed above and mandated that "[a]ll motorcycles and motor scooters . . . shall be exempt from [the no-fault law.]" But, HRS § 431:10C–501(a)(2) instructed that accidents involving pedestrians were to be excluded from the exemption:

> (2) In the case of accidental harm arising out of an accident to any passenger of such motorcycle or motor scooter, *or any pedestrian, motorcycles and motor scooters shall not be exempt from [HRS §§] 431:10C–301, . . . 431:10C–304 and . . . 431:10C–306* [.]

(Emphases added.) Thus, the legislature directed that in accidents involving a motorcycle and a pedestrian, the no-fault law would apply.

However, in 1989, the no-fault law was amended to repeal part V, including HRS § 431:10C–501 above, and to add a new part to HRS chapter 431, entitled "HRS chapter 431:10G, Motorcycle and Motor Scooter Insurance," referred to earlier. Hse. Stand. Comm. Rep. No. 1262, in 1989 House Journal, at 1306; *see* 1989 Haw. Sess. L. Act 208, § 1, at 413–17. HRS chapter 431:10G replaced part V of the no-fault law and expressly eliminated all no-fault benefits coverage in accidents involving motorcycles or motor scooters. Hse. Stand. Comm. Rep. No. 1262, in 1989 House Journal, at 1306–07. As to such accidents, "tort liability" was reinstated [10] and, as discussed *supra,* owners of motorcycles and motor scooters were required to obtain liability insurance:

> The purpose of [the addition of HRS chapter 431:10G wa]s to create a new article in [HRS chapter 431] . . . , *to contain provisions applicable to motorcycle and motor scooter insurance.* Presently, motorcycle and motor scooter liability insurance requirements are found in [p]art V of [the no-fault law], which this bill would repeal.
>
> In general, the creation of [HRS chapter 431:10G] . . . , as contemplated by this bill, would:

---

9. We note, however, that no express mention was made of bicyclists injured in motorcycle accidents.

10. HRS § 431:10G–105(a) (1993), entitled "Tort liability," provides that "[w]ith respect to accidental harm incurred in or arising out of a motorcycle accident[,] . . . tort liability is not abolished."

(1) Specify coverage required of an insurance policy covering a motorcycle or motor scooter;

(2) *Prohibit the driving of a motorcycle or motor scooter upon any public street, road, or highway unless it is insured under a liability policy* as provided in the bill;

. . . .

(4) *Provide that tort liability is not abolished with respect to accidental harm incurred in or arising out of a motorcycle or motor scooter accident,* and state the circumstances under which a cause of action in tort shall exist[.]

. . . .

This [amendment] also proposes to . . . :

. . . .

(3) *Clarify the general inapplicability of the no-fault law to motorcycles and motor scooters.*

Hse. Stand. Comm. Rep. No. 1262, in 1989 House Journal, at 1306–07 (emphases added).

Therefore, the legislature enacted HRS chapter 431:10G to create a "separate article for motorcycle and motor scooter insurance [to] clarify the distinction between" motor vehicle insurance and motorcycle and motor scooter insurance. Conf. Comm. Rep. No. 53, in 1989 Senate Journal, at 780. "[T]his arrangement clarif[ied] that the requirements of the no-fault law *and its benefits* do not apply to motorcycles or motor scooters." *Id.* (emphasis added).

Based on the foregoing, we conclude that the plain language of HRS chapter 431:10G

as well as its legislative history disqualify Appellants from no-fault benefits.[11] Only a legislative amendment to the relevant statutes could reinstate no-fault coverage in cases like this one.

## VI.

In their memorandum opposing Appellee's summary judgment motion, Appellants cited cases for the proposition that the Hawai'i Supreme Court "expanded the no-fault coverage for innocent parties injured by someone operating a motorcycle." However, those cases are clearly distinguishable from the instant one.

In *Bragg v. State Farm Mut. Auto. Ins. Co.,* 81 Hawai'i 302, 305, 916 P.2d 1203, 1206 (1996), the supreme court ruled that a motorcycle passenger injured in a collision with an automobile was entitled to no-fault benefits under the policy which covered the subject automobile. The issue in *Bragg* was whether no-fault coverage was extended by the automobile operator's automobile insurance policy. *Id.* at 309, 916 P.2d at 1210. In contrast, no motor vehicle, as defined by HRS § 431:10C–103(8), was involved in the instant case.

In *Dines v. Pacific Ins. Co.,* 78 Hawai'i 325, 326, 893 P.2d 176, 177, *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995), the supreme court held that a motorcyclist injured in an accident with an unidentified hit-and-run automobile driver may recover uninsured motorist benefits as the named insured under his own automobile policy.

---

11. In their memorandum in opposition to Appellee's summary judgment motion below, Appellants cited to HRS § 431:10C–305, which provides, in relevant part, as follows:

(a) (1) A claim for no-fault benefits for accidental harm of a person who is not an occupant of any motor vehicle involved in a motor vehicle accident may be made against the no-fault insurer of any involved vehicle.

. . . .

(b) (1) . . . [N]o-fault benefits shall be paid primarily from the following sources in the following conditions:

(A) The insurance on the vehicle occupied by the injured person at the time of the accident, or

(B) The insurance on the vehicle which caused accidental harm if the injured person is a pedestrian (including a bicyclist).
*If there is no insurance on the vehicle, any other no-fault insurance applicable to the injured person shall apply.*
(Emphasis added.) Appellants do not raise this argument on appeal. Under HRS § 431:10C–305(b)(B), if Kalani had been involved in an accident with a motor vehicle that was uninsured, no-fault benefits from "any other no-fault insurance" may be available to him.

This appeal does not raise any issues regarding uninsured motorists coverage under Cherie and Benjamin Bright's insurance policy. *See supra* n. 3.

## VII.

Accordingly, we affirm the court's October 5, 1998 order granting Appellee's summary judgment motion.