ROSS T. KAWAMOTO, Claimant-Appellee,
v.
NHC, INC., Employer-Appellant, and FIREMAN'S FUND INSURANCE CO., Insurance Carrier-Appellant.
No. 29295.
Intermediate Court of Appeals of Hawaii.
October 19, 2009.
Robin H. Horner (RRH & Associates) for Employer-Appellant and Insurance Carrier-Appellant.
David J. Mikonczyk, for Claimant-Appellee.

SUMMARY DISPOSITION ORDER
NAKAMURA, C.J., FUJISE and LEONARD, JJ.
In this workers' compensation case, Employer-Appellant NHC, Inc. (NHC) and Insurance Carrier-Appellant Fireman's Fund Insurance Company (FFIC) (collectively, NHC/FFIC) appeal from the July 7, 2008, Decision and Order of the Labor and Industrial Relations Appeals Board (LIRAB) entered in favor of Claimant-Appellee Ross T. Kawamoto (Kawamoto). In its Decision and Order, the LIRAB affirmed in part, reversed in part, and modified in part the decision of the Director of the Department of Labor and Industrial Relations (Director) entered on May 23, 2006.
Kawamoto sustained injuries on March 27, 2004, arising out of his employment with NHC. The dispute between the parties in this case concerns whether all of the injuries alleged by Kawamoto were attributable to his work for NHC, the extent of Kawamoto's injuries, and whether the consultations and treatments sought by Kawamoto were necessary.
The LIRAB, in pertinent part: 1) affirmed the Director's award of benefits to Kawamoto for permanent partial disability (PPD) of 8 percent of the whole person for the injury to Kawamoto's cervical spine; 2) affirmed the Director's denial of further consultation and treatment with respect to Kawamoto's cervical, thoracic, and lumbar spine injuries; 3) reversed the Director's determinations that Kawamoto did not suffer work-related bilateral shoulder injuries on March 27, 2004, and that Kawamoto was not entitled to a psychological consultation; and 4) determined that Kawamoto was entitled to an orthopedic consultation for his bilateral shoulder conditions and surgery for those conditions.
On appeal, NHC/FFIC challenge Findings of Fact (FsOF) 13, 28, and 37 and Conclusions of Law (CsOL) 1, 4, 6, 10, and 11 in the LIRAB's Decision and Order. NHC/FFIC challenge these FsOF and CsOL in support of their contention that the LIRAB erred in: 1) determining that Kawamoto a)suffered bilateral shoulder injuries on March 27, 2004, arising out of and in the course of his employment; b) was entitled to surgery for the bilateral shoulder conditions; and c) performed "lighter" work for a subsequent employer; 2) determining that Kawamoto was entitled to a psychological consultation; and 3) reserving for later determination by the Director the extent of PPD resulting from Kawamoto's shoulder conditions and psychological condition and the extent of disfigurement resulting from Kawamoto's shoulder conditions. We affirm the LIRAB's Decision and Order.

I.

A.
Kawamoto was employed by NHC as an assistant manager at an ABC Store in Waikiki. On March 27, 2004, while Kawamoto was working, he suffered injuries during a violent altercation with an angry customer. The customer attacked Kawamoto after Kawamoto prevented the customer from buying liquor.
Kawamoto sought medical treatment for injuries he sustained in the incident. Kawamoto complained of symptoms that included bilateral tingling in his hands, neck pain, and back pain. On April 9, 2004, Kawamoto was diagnosed by Dr. Melvin Chang with cervical, trapezius, mid-back, and low back strains. After this diagnosis, Kawamoto continued to complain of intermittent parasthesias and numbness in his arms and persistent discomfort in his trapezius area.
In late 2005, Kawamoto began seeing Dr. Scott McCaffrey, M.D. (Dr. McCaffrey) for treatment. Dr. McCaffrey diagnosed Kawamoto with cervical strain and sprain, thoracic strain and sprain, low back (lumbar) strain and sprain, and bilateral shoulder pain. In addition. Dr. McCaffrey submitted several treatment plans, including a plan for a psychological evaluation with Lyle Herman, Ph.D. (Dr. Herman), a clinical psychologist, and a plan for an orthopedic consultation with Gary Okamura, M.D. (Dr. Okamura), an orthopedic surgeon, to evaluate Kawamoto's cervical spine and shoulder conditions. NHC/FFIC denied these treatment plans.
On February 23, 2006, Kawamoto filed a workers' compensation claim on Form WC-5 (WC-5 Report), in which he claimed that he sustained injuries to his neck, mid-low back, and shoulders during the March 27, 2004, work incident. On March 30, 2006, Kawamoto filed an amended WC-5 report, which added "head and psychological injuries" as injuries he claimed resulted from the March 27, 2004, work incident.
In a decision issued on May 23, 2006, the Director upheld NHC/FFIC's denials of Dr. McCaffrey's treatment plans and determined that Kawamoto did not sustain bilateral shoulder injuries as a result of the March 27, 2004, work incident. The Director awarded Kawamoto compensation for an 8 percent PPD of the whole person for the injury to his cervical spine and determined that Kawamoto had not sustained any PPD or disfigurement as a result of the injury to his lumbar spine.
On January 25, 2007, Kawamoto saw Dr. Okamura for evaluation of both shoulders. MRIs performed on April 3, 2007, revealed rotator cuff tears in both shoulders. Dr. Okamura diagnosed Kawamoto with bilateral frozen shoulders, bilateral rotator cuff tears, and bilateral shoulder superior labral tears, and Dr. Okamura recommended surgery on both shoulders. Dr. Okamura performed surgery on Kawamoto's left and right shoulders in May and July of 2007, respectively. Payment for the shoulder consultations and the shoulder surgeries were denied by NHC/FFIC. Kawamoto used his personal medical insurance to pay for the consultations and surgeries.

B.
In its Decision and Order, the LIRAB made the following FsOF in support of its determinations that 1) Kawamoto sustained bilateral shoulder injuries arising out of the March 27, 2004, work incident and was entitled to an orthopedic consultation with Dr. Okamura and surgery for said conditions; and 2) Kawamoto was entitled to a psychological consultation with Dr. Herman:
26. At hearing. Dr. McCaffrey opined that [Kawamoto] had both cervical and bilateral shoulder pathology following the March 27, 2004 work accident, but [Kawamoto's] doctors did not initially diagnose or recognize a bilateral shoulder condition as part of the work injury. Dr. McCaffrey noted that [Kawamoto] developed tingling and numbness in the arms and hands from the work injury but those symptoms were attributed to his neck as cervical radiculopathy. Dr. McCaffrey surmised that the radicular symptoms could have been due to a mix of cervical and shoulder pathology. Although Dr. Chang recognized a bilateral trapezius muscle abnormality following the work accident, he did not identify it as either a neck or shoulder problem. Dr. McCaffrey attributed [Kawamoto's] bilateral shoulder condition to the March 27, 2004 work accident. Dr. McCaffrey believed that [Kawamoto] improved dramatically after the bilateral shoulder surgeries.
. . . .
Dr. McCaffrey testified that [Kawamoto] developed psychological symptoms following the work injury that prompted him to refer [Kawamoto] for a psychological evaluation.
27. [Kawamoto] testified at trial that after his shoulder surgeries, the radiating pain in his arms was gone; however, he still had pain in the shoulder joint areas and numbness and tingling in the baby and ring fingers in both hands. [Kawamoto] testified that the shoulder surgeries were helpful. [Kawamoto] complained of persistent nightmares from the March 27, 2004 incident.
28. With regard to [Kawamoto's] bilateral shoulder conditions, the [LIRAB] credits [Kawamoto's] hearing testimony and the reports and opinions of Dr. Okamura and Dr. McCaffrey and finds that [Kawamoto] injured both shoulders in the March 27, 2004 work accident.
. . . .
37. The [LIRAB] credits the testimony of Dr. McCaffrey and [Kawamoto] and finds that [Kawamoto] requires a psychological evaluation for psychological symptoms that developed following the March 27, 2004 work injury.

II.
Hawaii Revised Statutes (HRS) § 386-85(1) (1993) establishes a presumption that an employee's claim for workers' compensation is for a covered work injury. The employer bears the ultimate burden of persuasion, and the claimant is given the benefit of the doubt, on the work-relatedness issue. Nakamura v. State, 98 Hawai'i 263, 268, 47 P.3d 730, 735 (2002).
We give deference to the LIRAB's assessment of the credibility of witnesses and the weight given to the evidence.
It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.
Id. (block quote format changed) (quoting Igawa v. Koa House Restaurant, 97 Hawai'i 402, 409-10, 38 P. 3d 570, 577-78 (2001)). We review the LIRAB's FsOF under the clearly erroneous standard and its CsOL de novo. Id. at 267, 47 P.3d at 734.

III.

A.
NHC/FFIC argue that the LIRAB erred in determining that Kawamoto 1) suffered bilateral shoulder injuries as a result of the March 27, 2004, work incident and 2) was entitled to surgery for the bilateral shoulder conditions. In support of this argument, NHC/FIFC challenge the LIRAB's FOF 28 and CsOLs 1 and 4, which provide in relevant part:
[FOF] 28. With regard to [Kawamoto's] bilateral shoulder conditions, the [LIRAB] credits [Kawamoto's] hearing testimony and the reports and opinions of Dr. Okamura and Dr. McCaffrey and finds that [Kawamoto] injured both shoulders in the March 27, 2004 work accident.
. . . .
[COL] 1. The [LIRAB] concludes that [Kawamoto] sustained bilateral shoulder injuries on March 27, 2004, arising out of and in the course of employment. [Kawamoto] is entitled to reasonable and necessary medical care as the nature of his bilateral shoulder injuries may require. . . .
. . . .
[COL] 4. The [LIRAB] concludes that [Kawamoto] is entitled to an orthopedic consultation with Dr. Okamura for [Kawamoto's] bilateral shoulder conditions and surgery for said conditions ....
The parties presented conflicting evidence over whether Kawamoto's bilateral shoulder injuries arose out of the March 27, 2004, work incident. NHC/FFIC's claim boils down to an assertion that the LIRAB erred in crediting Kawamoto's evidence over the evidence NHC/FFIC presented. However, we give deference to the LIRAB's assessment of the credibility of witnesses and the weight given to the evidence, and as a general rule, such assessments will not be disturbed on appeal. See Nakamura, 98 Hawai'i at 268, 47 P.3d at 735; Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001). Based on our review of the record, we find no reason to overturn the LIRAB's decision to credit the evidence presented by Kawamoto over that presented by NHC/FFIC.
Kawamoto presented substantial evidence that his bilateral shoulder injuries were the result of the March 27, 2004, work incident and that surgery was necessary to repair the injuries. Thus, the LIRAB's FOF 28 was not clearly erroneous and its CsOL 1 and 4 were not wrong.[1]
NHC/FFIC assert that the LIRAB lacked subject matter jurisdiction to determine that Kawamoto was entitled to shoulder surgery because: 1) the Director denied the compensability of the bilateral shoulder injuries and thus did not address Kawamoto's entitlement to surgery for such conditions; and 2) Kawamoto's entitlement to surgery was not specifically identified as an issue on appeal to the LIRAB. NHC/FFIC cite no authority to support their claim of lack of subject matter jurisdiction, and we reject it.
HRS § 386-87 (1993) provides that in an appeal from a decision of the Director, the LIRAB shall hold a full hearing de novo and "may affirm, reverse or modify any compensation case upon review, or remand the case to the [D]irector for further proceedings and action." Pursuant to HRS § 386-87, the LIRAB had subject matter jurisdiction to resolve the necessity for Kawamoto's shoulder surgeries in Kawamoto's appeal of the Director's decision that the bilateral shoulder injuries were not compensable.
In contending that Kawamoto's entitlement to surgery was not specifically identified as an issue on appeal to the LIRAB, NHC/FFIC are presumably referring to the pretrial order. The LIRAB's pretrial order included as issues on appeal; "Whether [Kawamoto] sustained bilateral shoulder injuries on March 27, 2004, arising out of and in the course of employment"; and 2) "Whether [Kawamoto] is entitled to a[n] orthopedic consultation with Dr. Gary Okamura for... shoulder conditions." NHC/FFIC cite no authority for the proposition that the specific identification of an issue in a pretrial order is necessary to confer subject matter jurisdiction over that issue to the LIRAB. Indeed, the LIRAB's rules permit it to modify its pretrial order at trial to prevent manifest injustice. HAR § 12-47-22 (c).
In any event, we conclude that NHC/FFIC had adequate notice that Kawamoto's entitlement to shoulder surgery would be an issue before the LIRAB if the LIRAB concluded that his shoulder injuries arose out of the March 27, 2004, work incident. NHC/FFIC do not contend that they were prevented from presenting evidence regarding the necessity for the shoulder surgeries or that they did not have a fair opportunity to address this issue.

B.
NHC/FFIC challenge FOF 13 which provides that "[o]n or about June 1, 2005, [Kawamoto] began work for another employer, doing much lighter work." NHC/FFIC contend that this finding was clearly erroneous because the work Kawamoto performed for NHC was "not significantly heavier or lighter" than the work he did for his subsequent employer, Foodland.
There was substantial evidence to support FOF 13, including Kawamoto's testimony, which the LIRAB decided to credit in determining that Kawamoto sustained his shoulder injuries on March 27, 2004, while working for NHC. We conclude that FOF 13 was not clearly erroneous.
Furthermore, even assuming, arguendo, that NHC/FFIC's contention that Kawamoto's work for NHC was comparable to his work for Foodland were true, we conclude that the discrepancy between NHC/FFIC's contention and FOF 13 was not significant. It does not appear that the assessment of whether Kawamoto's work for Foodland was the same or much lighter than his work for NHC played any meaningful role in the LIRAB's determination that Kawamoto sustained bilateral shoulder injuries on March 27, 2004, while working for NHC. Thus, the alleged error regarding FOF 13 asserted by NHC/FFIC was harmless.

IV.
NHC/FFIC argue that the LIRAB erred in determining that Kawamoto was entitled to a psychological consultation with Dr. Herman. In support of this argument, NHC/FFIC challenge the LIRAB's FOF 37 and COL 6, which provide as follows:
[FOF] 37. The [LIRAB] credits the testimony of Dr. McCaffrey and [Kawamoto] and finds that [Kawamoto] requires a psychological evaluation for psychological symptoms that developed following the March 27, 2004 work injury.
[COL] 6. The [LIRAB] concludes that [Kawamoto] is entitled to a psychological consultation with Dr. Herman.
We conclude that there is no basis for overturning the LIRAB's decision to credit the testimony of Dr. McCaffrey and Kawamoto with respect to Kawamoto's need for a psychological evaluation. Based on such testimony, the LIRAB was not wrong in concluding that Kawamoto was entitled to a psychological consultation with Dr. Herman.
We reject NHC/FFIC's arguments that: 1) the LIRAB could not determine that Kawamoto was entitled to a psychological consultation because the Director has not ruled that Kawamoto suffered a compensable psychological injury; 2) Kawamoto's claim for psychological injury is barred by the two-year statute of limitations set forth in HRS § 386-82 (1993); and 3) Kawamoto has been treating with a different psychologist, so the issue is moot.
First, the Director denied the treatment plan calling for a psychological consultation with Dr. Herman, and whether Kawamoto was entitled to a psychological consultation with Dr. Herman was identified in the LIRAB's pretrial order as one of the issues to be determined on appeal. Thus, the LIRAB plainly had the power to decide this issue.
Second, the two-year statute of limitations for filing a claim for workers' compensation benefits set forth in HRS § 386-82 begins to run on "the date at which the effects of the injury for which the employee is entitled to compensation have become manifest." Kawamoto filed his claim for psychological injury two years and three days after the date of the incident in which he sustained physical injuries at work. The record indicates that the psychological injuries alleged by Kawamoto did not become manifest until some time after the incident. Moreover, HRS § 386-83 (b) (1993) provides that "[u]nless the employer is prejudiced thereby," the claimant's failure to make a claim within the applicable statute of limitations "shall not bar a claim of compensation if objection to such failure is not raised at the first hearing on the claim of which the employer is given reasonable notice and opportunity to be heard." Here, NHC/FFIC have not asserted any prejudice from the alleged untimely filing of Kawamoto's psychological-injury claim, and the record shows that NHC/FFIC did not raise a statute-of-limitations defense before the LIRAB despite being given reasonable notice and opportunity to do so.
Third, NHC/FFIC have not presented sufficient evidence to support their mootness argument. NHC/FFIC do not point to evidence in the record that would enable this court to conclude that Kawamoto's claim for a psychological consultation with Dr. Herman is moot.

V.
We reject NHC/FFIC's argument that the LIRAB erred in reserving for later determination by the Director the extent of PPD resulting from Kawamoto's shoulder conditions and psychological condition and the extent of disfigurement resulting from Kawamoto's shoulder conditions. NEC/FFIC challenge a portion of COL 10 and COL 11, which provide as follows:
[COL] 10.....
The Board reserves for later determination by the Director the extent, if any, of PPD resulting from [Kawamoto's] bilateral shoulder conditions and psychological condition.
[COL] 11. The Board reserves for later determination by the Director the extent of disfigurement resulting from [Kawamoto's] March 27, 2004 bilateral shoulder injuries.
NHC/FFIC contend that the LIRAB "cannot defer its obligation to rule on [these issues] to the Department of Labor which is a separate administrative agency." NHC/FFIC's contention that the LIRAB is without authority to reserve issues for initial determination by the Director is plainly wrong. The LIRAB has the power to either 1) decide issues not previously ruled upon by the Director that are within the LIRAB's jurisdiction or 2) remand such issues for decision by the Director.
As noted, under HRS § 386-87 (c), the LIRAB has the power to affirm, reverse, or modify the Director's decision or remand the case to the Director for further proceedings and action. In addition, HAR § 12-47-24 (1994) provides that "[t]he [LIRAB] may issue an order remanding any proceeding: (1) For determination of an issue not decided by the [D]irector; or (2) For such other action by the [D]irector as may serve the interests of the just, speedy, and inexpensive determination of the appeal." Thus, the LIRAB did not err in reserving the extent of PPD resulting from Kawamoto's shoulder conditions and psychological condition and the extent of disfigurement resulting from Kawamoto's shoulder conditions for later determination by the Director.

VI.
The LIRAB's July 7, 2008, Decision and Order is affirmed.
NOTES
[1] NHC/FFIC summarily assert that the LIRAB should have disregarded and stricken Dr. McCaffrey's testimony that Kawamoto's shoulder injuries were attributable to the March 27, 2004, work incident because Dr. McCaffrey's opinion on causation was not disclosed prior to the discovery cutoff. NHC/FFIC, however, do not point to any discovery order which required the disclosure of such opinion before trial. In addition, Hawaii Administrative Rules (HAR) § 12-47-22(c) (1994) permits the LIRAB to modify a pretrial order at trial "to prevent manifest injustice." Furthermore, NHC/FFIC do not contend that they lacked the ability to cross-examine Dr. McCaffrey on his opinion; nor do they show that they were substantially prejudiced by the alleged late disclosure. Under these circumstances, we cannot say that the LIRAB erred in permitting Dr. McCaffrey's testimony.