NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 28558

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DON INOUYE, individually and as a shareholder of
DA COMPANY INTERNATIONAL, INC., Plaintiff-Appellant, v.
GEORGE CRAIG HUGHES, DA COMPANY INTERNATIONAL, INC.,
a Hawaii corporation, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-1922)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Foley and Leonard, JJ.)

Plaintiff-Appellant Don Inouye (**Inouye**) appeals from
the Circuit Court of the First Circuit's (**Circuit Court's**) May
18, 2007 Final Judgment, entered against Inouye and in favor of
Defendant-Appellee George Craig Hughes (**Hughes**) after a non-jury
trial.[1]

This case arises out of a dispute between Inouye and
Hughes concerning the ownership and management of a Waikiki beach
concession stand. Inouye contends he owned fifty percent of the
concession business. Hughes claims that the concession was at
all relevant times wholly owned and operated by his company HSI
Manufacturing, Inc., dba Prime Time Sports (**PTS**), and that Inouye
acted solely as an employee of PTS. Hughes also claims that Da
Company, Inc., a corporation formed by Inouye, was merely a
vehicle to divide the profits from concession business pursuant
to an agreement between Hughes and Inouye that they would split
those profits evenly, after PTS was reimbursed for payroll and
other expenses.

The parties had a falling out in early 2005, when
Inouye asserted and Hughes denied that Inouye owned half of the

_____

[1] The Honorable Victoria S. Marks presided.

concession business. Hughes withdrew the funds in Da Company's checking account. Inouye left the business and demanded an accounting and a resolution of his ownership claim. According to the Circuit Court's post-trial findings of fact, Hughes then discovered that Inouye had diverted jet ski and parasail business away from Hughes's concession to another company, Beautiful Day Tours (**BDT**), that was owned by Inouye. Hughes also discovered that Inouye had failed to reimburse PTS for "borrowed labor" used at the concession, which resulted in the profits of the concession business being inflated.

After an apparently failed mediation, in October 2005, Inouye filed a ten-count complaint, seeking relief for:

(1) Conversion of cash and other assets belonging to Da Company;

(2) Theft of corporate opportunity;

(3) Breach of Hughes's alleged fiduciary duty to Inouye as a co-owner of Da Company;

(4) An accounting of Da Company's financial records;

(5) Unjust enrichment;

(6) Derivative claims, as a shareholder of Da Company;

(7) Judicial dissolution of Da Company;

(8) Misrepresentation related to the mediation wherein the parties allegedly reached a tentative agreement, which was followed by Hughes's claim to a bonding company alleging that Inouye had embezzled money;

(9) Defamation relating to Hughes's published claim of embezzlement by Inouye; and

(10) Punitive damages.

Following completion of the trial, on May 1, 2007, the Circuit Court entered its Findings of Fact, Conclusions of Law, and Order in favor of Hughes and against Inouye on Counts I-III, V, VI, and VIII-X. Regarding Count IV (accounting), the court concluded that Inouye owed Hughes $3,832.04. Regarding Count

VII, the court ordered that Da Company, Inc. be dissolved. The Circuit Court also awarded Hughes attorney's fees in the amount of $26,439.50 and costs totaling $3,022.94. On May 23, 2007, Inouye timely filed an appeal from the Circuit Court's May 18, 2007 Final Judgment.

On appeal, Inouye alleges that the Circuit Court made "numerous" factual and legal errors in its decision. More specifically, Inouye raises five points of error on appeal:

(1) The Circuit Court erred when it found that Inouye had no ownership interest in the concession business, and that the concession business was always owned and operated by PTS. Inouye also alleges error in the court's finding that all of Inouye's actions regarding the concession business were done in his capacity as an employee of PTS;

(2) The Circuit Court erred when it concluded that Inouye should have helped himself to Da Company books and assets once Inouye learned that his ownership in the concession was being disputed;

(3) The Circuit Court erred when it found that Inouye failed to properly reimburse PTS for borrowed employee expenses;

(4) The Circuit Court erred when it found that Inouye diverted jet ski and parasail revenues from PTS to his own company, BDT; and

(5) The Circuit Court erred as a matter of law when it awarded Hughes attorney's fees pursuant to Hawaii Revised Statutes (**HRS**) § 607-14.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Inouye's points of error as follows:

(1) Inouye contends that the Circuit Court's finding that he had no interest in the Waikiki concession business was clearly erroneous and against the clear weight of evidence. As

Inouye admits, the Circuit Court's findings are "consistent with and supported by Hughes's written and oral testimony." Hughes testified, *inter alia*, that: (a) Inouye and Hughes never had a deal or understanding that they were partners; (b) at all relevant times, Inouye was solely acting as an employee of PTS; (c) the sole purpose of Da Company was to allow Inouye to share in the profits from the concession; and (d) the concession was always a PTS concession, which was manned and controlled by PTS employees.

Although Hughes's testimony contradicts testimony by Inouye and other witnesses called by Inouye, it nonetheless provides substantial evidence to support the Circuit Court's findings because such evidence could enable a person of reasonable caution to support the Circuit Court's finding. See, e.g., Beneficial Hawai'i, Inc. v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001). It is well-established that "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." See, e.g., Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001). Upon review of the entire record, we conclude that the Circuit Court's findings concerning the ownership of the concession business were not clearly erroneous.

(2) In Inouye's second point of error, he takes out of context the Circuit Court's last sentence of its fourth conclusion of law. The Circuit Court's third and fourth conclusions of law state:

> 3. Inouye's conversion claim (Count I) is dismissed. He claimed that Hughes took certain items (*e.g.*, refrigerator, flat screen television) which belonged to him as well as certain unidentified books and records belonging to Da Company. He also claimed that Hughes took monies belonging to Da Company.[2]
>
> [2] This allegation will be addressed in connection with Count IV re: accounting.

4.    Inouye failed to prove the [sic] Hughes or someone at his direction or PTS took the television or documents that belonged to anyone other than PTS.  At most, someone received a refrigerator from PTS Stand I at the Hale Koa Hotel.  Moreover, with respect to the storage room at the Waikiki Shores, Inouye had the keys and Hughes never deprived him of access to the room.

Inouye claims that the final sentence above, along with Hughes's testimony that upon discovering that his ownership interest was disputed, Inouye "had three months to remove whatever he thought Da Company owned," amounts to a legal conclusion that Inouye should have "helped himself" to Da Company assets.  This skewed view of the Circuit Court's conclusion is without merit.  The Circuit Court was merely explaining why Inouye's conversion claim failed.  In its fourth conclusion of law, the Circuit Court simply concluded that Hughes did not convert assets of Da Company by affirmatively removing them from the storage room, nor did he convert such assets by depriving Inouye of access to them.

(3)  Inouye contends that the Circuit Court clearly erred when it found that Inouye did not sufficiently reimburse PTS for borrowed labor utilized at the concession stand.  Although conflicting evidence was presented by Inouye, the Circuit Court's finding is sufficiently supported by the record on appeal.

In his direct testimony, Hughes described the circumstances surrounding Inouye's failure to reimburse PTS for borrowed labor used at the Waikiki Shores concession.  Hughes testified that the concession business had not been sufficiently reimbursed for employee hours, and that Inouye's compensation was unjustly inflated as a result.  Hughes averred that PTS was under-reimbursed by approximately $18,000.00.

Hughes's testimony provides substantial evidence to support the Circuit Court's finding that Inouye did not properly reimburse PTS for employee expenses.  Upon review of the entire

record, this court is not left with a definite and firm conviction that a mistake has been made. See Kida, 96 Hawai'i at 305, 30 P.3d at 911. Inouye concedes that the finding was supported by Hughes's testimony, but argues that the finding was against the clear weight of the evidence. Because the task of weighing conflicting evidence and the relative credibility of the witnesses is within the province of the trial court, and the court's finding is supported by substantial evidence, we conclude that the Circuit Court did not clearly err in its finding that Inouye insufficiently reimbursed PTS.

(4) Inouye contends that the Circuit Court clearly erred when it found that Inouye had improperly diverted jet ski and parasail business away from PTS and to his own company, BDT. The Circuit Court's finding is supported by substantial evidence presented to the court. Hughes testified, inter alia, that, following the Hale Koa Hotel's request to send military jet ski and parasail business to that hotel, all civilian parasail and jet ski business was supposed to be sent to the Waikiki Shore concession, and that Hughes instructed PTS employees to direct such business accordingly. Hughes further testified that, instead of sending civilian jet ski and parasail business to PTS's concession, Inouye directed such business to BDT. Although conflicting with Inouye's testimony, Hughes's testimony sufficiently supports the Circuit Court's finding, which we conclude is not clearly erroneous.

(5) Inouye argues that the Circuit Court erred, as a matter of law, when it awarded attorney's fees to Hughes pursuant to HRS § 607-14 because this suit is not an action in assumpsit. In the first instance, we note that Inouye wrongly urges this court to review the award of attorney's fees de novo, rather than using the abuse of discretion standard. See, e.g., Sierra Club v. Dep't of Transp. of the State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) ("The trial court's grant or denial of

attorney's fees and costs is reviewed under the abuse of discretion standard.") (internal quotation marks, citations, and brackets omitted). Nevertheless, we conclude that the Circuit Court abused its discretion in granting attorney's fees to Hughes in this case.

In TSA Int'l, Ltd. v. Shimizu Corp., 92 Hawai'i 243, 263, 990 P.2d 713, 733 (1999) (citations omitted) (emphasis added), the Hawai'i Supreme Court set forth the following general principles related to the recovery of attorneys' fees:

> Generally, under the "American Rule," each party is responsible for paying for his or her own litigation expenses. A notable exception to the "American Rule," however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by *statute,* stipulation, or agreement.

In the present case, the statutory exception to the "American Rule" relied on by the Circuit Court is HRS § 607-14 (Supp. 2006) (emphasis added), which provides in relevant part:

> **§ 607-14. Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

> As the supreme court has often stated:

> 'Assumpsit' is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or [oral], as well as quasi contractual obligations.

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai'i 251, 281, 151 P.3d 732, 762 (2007) (citations omitted).

In Kahala Royal, the court explained:

> In ascertaining the nature of the proceedings on appeal, this court has looked to the *essential character* of the underlying action in the circuit court.
> The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit. Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit.
> In addition, the manner in which the plaintiff has characterized the action may also be accorded some weight.

Id. (citations, brackets, elipses, and internal quotation marks omitted; format altered).

In the case at bar, Inouye did not seek to collect money damages based on breach of contract. Instead, Inouye alleged that Hughes converted Inouye's property and moneys, usurped Inouye's corporate opportunity, breached a fiduciary duty owed to Inouye as a business partner, unjustly enriched himself at Inouye's expense, made actionable misrepresentations, and defamed Inouye. These causes of action sound in tort and restitution.[2] In addition, Inouye raised "derivative claims" on behalf of Da Company, sought an accounting of the parties' respective interests in the business, and sought punitive damages and a dissolution of Da Company. The Circuit Court rejected Inouye's claims, and instead adopted Hughes's view that the parties' relationship was merely that of an employer-employee. Nevertheless, based on the factual allegations and issues raised in the complaint, the essential character of this action is that Hughes wrongly took property, money, and business opportunities that belonged to Inouye. Inouye did not assert claims for breach

---

[2] See generally RESTATEMENT (SECOND) OF TORTS § 222A (Conversion), § 525 et seq. (Misrepresentation), § 558 et seq. (Defamation) (1965); TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i at 264, 990 P.2d at 734 (breach of fiduciary duty sounds in tort); Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 47, 122 P.3d 1133, 1145 (App. 2005) (discussing tort of interference with prospective business advantage); Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 502-04, 100 P.3d 60, 72-74 (2004) (distinguishing a claim for unjust enrichment, based on principles of restitution, from claims sounding in contract or tort).

of a contract, express or implied.  The mere fact that Inouye's claims relate to a contractual or quasi-contractual relationship between the parties does not render the dispute between the parties to be in the nature of assumpsit.  Accordingly, we conclude that the Circuit Court abused its discretion in granting an award of attorney's fees to Hughes pursuant to HRS § 607-14.

For the foregoing reasons, the Circuit Court's May 18, 2007 Final Judgment is affirmed in part and reversed in part.  The Circuit Court's award of attorney's fees to Hughes in the amount of $26,439.50 is reversed.  In all other respects, the Circuit Court's May 18, 2007 Final Judgment is affirmed.

DATED:  Honolulu, Hawaiʻi, June 29, 2010.

On the briefs:

Seth M. Reiss
for Plaintiff-Appellant

Richard E. Wilson
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge

9